# Southern Ry. Co. *v.* Benefield, *et al.*

## *Action Under Homicide Act.*

(Decided April 13, 1911.    55 South. 252.)

1. *Appeal and Error; Review; Matters Favorable to Appellant.*— Where a negligence action was submitted to the jury solely on a count charging wanton negligence, this court will not, on appeal, review the questions of simple, subsequent or contributory negligence, as they had already been ruled favorably to appellant.

2. *Negligence; Wantonness.*—As applied to negligence, wantonness consists in consciousness, from a knowledge of existing circumstances, that the conduct of the negligent person will probably result in injury, coupled with a reckless, but unintentional, disregard of the nature or probable consequences of his acts.

3. *Railroads; Trespassers.*—It is the duty of a railroad not to wantonly or intentionally injure a trespasser on its track.

4. *Same.*—One who attempts to cross a railroad track beneath or between cars when he has no right to cross, is a trespasser, whether such one be an adult or a child; especially where the point of crossing is not a public highway.

5. *Same; Wanton Negligence.*—The facts and circumstances in evidence in this case considered and held not to authorize a submission to the jury of the question of wanton or willful negligence.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Action by E. F. Benefield and others as administrators, under the homicide act, against the Southern Railway Co., for the death of a minor child. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

[Southern Ry. Co. v. Benefield, et al.]

WEATHERLY & STOKELY, for appellant. The right to cross a railroad track is a qualified right and carefully guarded by our decisions.—*Stringer v. R. R. Co.*, 99 Ala. 409; *Glass v. R. R. Co.*, 94 Ala. 587; *R. R. Co. v. Linn*, 103 Ala. 139; *T. C., I. & R. R. Co. v. Hanfsord*, 125 Ala. 362. A person on a railroad track not at a public crossing, is a trespasser whether he be an adult or a child.—*N. C. & St. L. v. Harris*, 142 Ala. 249; *A. C. G. & A. Ry. Co. v. Julian*, 133 Ala. 473; *H. A. & B. R. R. Co. v. Robbins*, 124 Ala. 118; *Jefferson v. R. R. Co.*, 116 Ala. 300. On these authorities it must be held that the defendant was entitled to the affirmative charge, and that the court erred in submitting the question of defendant's wantonness to the jury.

STALLINGS & DRENNEN, for appellee. It is the duty of trainmen not to wantonly or intentionally injure a trespasser on a railroad track.—*A. G. S. v. Guest*, 144 Ala. 373. Under the facts in this case the trainmen were guilty of wantonness and the court properly submitted that issue to the jury.—*Ga. Pac. Ry. Co. v. Lee*, 92 Ala. 252; *A. G. S. R. R. Co. v. Williams*, 140 Ala. 230; *B'ham Ry., L. & P. Co. v. Landrum*, 45 South. 199; *B'ham Ry., L. & P. Co. v. Jones*, 41 South. 147; *L. & N. v. Browne*, 121 Ala. 226; *B'ham Ry., L. & P. Co. v. Pinckard*, 124 Ala. 378; *Anniston E. & G. Co. v. Elwell*, 144 Ala. 317; *M., J. & K. C. R. R. Co. v. Smith*, 45 South. 57.

MAYFIELD, J.—This action is under the homicide statute, to recover damages for the wrongful death of plaintiffs' intestate, who was a child under seven years of age.

The child was attending school on the day it was killed. It had been playing with its schoolmates, dur-

ing the noon recess, and the second bell was calling them from play to books. The playground, or a part thereof, extended across the defendant's railroad tracks from the schoolhouse. At the time of the fatal accident, a number of box cars, coupled together, were standing upon the track between the playground and the schoolhouse. The children attempted to cross the railroad track by going under these box cars and over the couplings. Some had crossed safely, and others had not crossed. Intestate was in the act of crossing, by crawling under a car or over the coupling between two cars, when an engine, attached to several other cars, was backed against the standing cars, for the purpose of coupling on to them and making up the train. The impact caused by the moving engine and cars striking the standing cars knocked the latter one or two car lengths from their position of rest, thus running over and killing intestate, who was at the time attempting to cross, as stated.

The children who had crossed the track hollowed to those who had not crossed to look out for the train, which was backing in to be coupled. There is no evidence, however, that either the intestate or the persons in charge of the moving train heard the warning. But the evidence does show, and without dispute, that it was wholly improbable, if not impossible, that the persons in charge of the train heard or could have heard this warning. The evidence is without dispute that those in charge of the train did not see intestate, or know of his peril at the time of the injury. It was shown, however, that the train crew were familiar with the locus in quo, and that the playground was across the track from the schoolhouse, and that the children were in the habit of frequently crossing the track during recess, and that the fatal hour was the time for the

noon recess. But there was no evidence that there was a habit or custom among these school children to cross the track by climbing over or under the couplings of cars standing thereon; much less any evidence that the crew knew of a custom to so cross the track. The evidence was that the train was moving at the rate of from two to ten miles per hour, when it came in contact with the standing cars. There was no evidence to show that the coupling was made in such wanton, reckless, and indifferent manner as to amount to even gross negligence, much less wanton negligence. While it may be said that the train was moving faster than was usual or customary in making such couplings, and therefore faster than was necessary in order to effect the coupling, there was no evidence to show that the coupling was made wantonly or recklessly, though it may have tended to show that it was negligently done. We not only feel satisfied that there was no evidence tending to show wantonness in making the coupling, but we feel impelled to so hold, under all the evidence in the case.

There were six counts in the complaint, but the sixth count was withdrawn by the plaintiffs in open court. Demurrers were sustained to counts 2, 3, and 4, leaving only counts 1 and 5 in the complaint.

Count 1 charged simple negligence only in the manner of the operation of the train in Pinkney City, Ala., where the accident occurred; but as to this count the court, on the written request of the defendant, gave the general affirmative charge at the conclusion of the evidence.

The fifth count of the complaint charged that the defendant's servants in charge or control of the train willfully, wantonly, or intentionally "ran or propelled said locomotive, train, car or cars, on, over, or against plaintiffs' intestate, and thereby killed plaintiffs' in-

testate, who was a little child, to wit, seven years old."
The general issue was pleaded to this count.

The case being tried or going to the jury solely on
the count charging wantonness or willful injury, it is
both unnecessary and improper that we should treat
or decide questions as to simple, subsequent, or con-
tributory negligence, as these questions were all ruled
on in favor of the appellant, and no injury could possi-
bly have resulted to appellant from rulings of the trial
court thereon. The only questions we will consider are
those relating to wantonness, or willful injury.

The following propositions of law are well settled in
this state, touching the question of liability as for wan-
ton or willful injury:

"The duty not to wantonly, willfully, or intentionally
kill or injure a trespasser on a railroad track, in the
operation of the engines or cars thereon, is just as im-
perative as not to so injure one rightfully on such
track; in such cases the law makes no possible distinc-
tion."—*A. G. S. R. R. Co. v. Guest, Adm'r,* 144 Ala.
373 (headnote 7) 39 South. 654.

"An intent to injure on the part of the defendant's
employees is not essential to a liability, notwithstand-
ing contributory negligence; it is enough if they exhibit
such wantonness and recklessness as to probable con-
sequences as implies a willingness to inflict or an indif-
ference as to whether injury is inflicted therefrom."—
*A. G. S. R. R. Co. v. Williams,* 140 Ala. 230 (headnote
6), 37 South. 255.

" 'Wantonness' consists in consciousness by one
charged with it, from his knowledge of existing circum-
stances and conditions, that his conduct will probably
result in injury, and yet, with reckless indifference or
disregard of the natural or probable consequences, but
without intention to inflict injury, he does or fails to

do the act."—*B. R. L. & P. Co. v. Landrum,* 153 Ala. 194, 45 South. 199 (headnote 16), 127 Am. St. Rep. 25.

"To the implication of willfulness, or wantonness, or reckless indifference to probable consequences, it is essential that the act done or omitted should be done or omitted with a knowledge and a present consciousness that the injury would probably result. The jury may, in a proper case, infer such consciousness, willfulness, or wantonness from his knowledge of the existing perilous conditions."—*L. & N. R. R. Co. v. Brown, Adm'r.,* 121 Ala. 226, 25 South. 611.

"We think it may be safely stated as common knowledge that it is exceedingly difficult to approach and couple to a stationary car, or section of cars, without disturbing to some extent the cars so coupled to; and, if the approach be downgrade, the danger of disturbance and the extent of it will be increased. When a car is thus approached and coupled to, if disturbed and moved by concussion, the movement will be from the engine, and for all practical purposes will present a case similar to backing a train. Such movement, if across a public highway, or in a much frequented part of a city or town, and if there be no modifying circumstances in the case, would impose the duty of having some person so stationed, as a watchman, that warning might be given of impending danger."—*Pannell, Adm'x, v. Nashville, Florence & Sheffield R. R. Co.,* 97 Ala. 298, 302, 12 South. 236, 237.

"Where the circumstances of a case are such that it may be reasonably concluded that a person was guilty of a willful or wanton act, the question must be submitted to the jury."—*Anniston E. & G. Co. v. Elwell,* 144 Ala. 317 (headnote 8), 42 South. 45.

But this court has held, where a person attempted to cross a railroad track by passing under the coupling of

two box cars which were coupled together and consti-tuted part of a train standing temporarily on a side track, not only that the act was negligence on his part, but that the "accident occurred at a point where the trainmen had a right to presume no one would attempt to cross."—*M. & C. R. R. Co. v. Copeland,* 61 Ala. 380. See, also, *Railroad Co. v. King,* 81 Ala. 177, 2 South. 152.

The right to cross a railroad track is a qualified right, and is carefully guarded by our decisions.— *Stringer v. Railroad Co.,* 99 Ala. 409, 13 South. 75; *T. C. I. & R. R. Co. v. Hansford,* 125 Ala. 362, 28 South. 45, 82 Am. St. Rep. 241; *Glass v. Railroad Co.,* 94 Ala. 587, 10 South. 215; *Railroad Co. v. Linn,* 103 Ala. 139, 15 South. 508  This court has uniformly held that a person has the right to cross a track after stopping, looking, and listening; but, if he lingers or stands upon the track, he thereby becomes a trespasser, and no duty is owed to him, except not to wantonly or intentionally injure him.

By analogy, we think that where a person attempts to cross a railroad track by going beneath or between cars which are connected together, and he has no right to cross, he thereby becomes a trespasser. The right of the pedestrian to cross the track, in such case, is sub-ordinate to the right of the railroad company to occupy its own track with its own cars, and this is especially true where there is no highway crossing the track at such point. This being true, the principle is just as applicable to children as to adults.—*N. C. & St. L. Ry. v. Harris,* 142 Ala. 249, 37 South. 794, 110 Am. St. Rep. 29; *H. A. & B. R. R. Co. v. Robbins,* 124 Ala. 118, 27 South. 422, 82 Am. St. Rep. 153; *Railroad Co. v. Ju-lian,* 133 Ala. 373, 32 South. 135; *Jefferson v. Railway*

*Co.,* 116 Ala. 300, 22 South. 546, 38 L. R. A. 458, 67 Am. St. Rep. 116.

It was said in *Jefferson's Case, supra,* that: "Ordinarily a man who is using his property in a public place is not obliged to employ a special guard to protect it from intrusion of children, merely because an intruding child may be injured by it. We have all seen a boy climb up behind a chaise or other vehicle for the purpose of stealing a ride, sometimes incurring a good deal of risk. It has never been supposed that it was the duty of the owner of such a vehicle to keep an outrider on purpose to drive such boys away, and that, if he does not, he is liable to pay anyone who is injured while thus stealing a ride. In such a case no duty of care is incurred."—116 Ala. 301, 22 South. 549 (38 L. R. A. 458, 67 Am. St. Rep. 116).

In the same case, the court, quoting from 3 Elliott on Railroads, § 1259, had this to say: "We believe the true rule to be that, although the age of a child may be . important in determining the question of contributory negligence, or the duty of the company after discovering him, the company is, in a general way, no more bound to keep its premises safe for children who are trespassers, or bare licensees, not invited or enticed by it, than it is to keep them safe for adults."—116 Ala. 300, 22 South. 548 (38 L. R. A. 458, 67 Am. St. Rep. 116). And see *Chambers v. M. & C. R. R. Co.,* 143 Ala. 261, 39 South. 170.

In *Harris' Case, supra,* the injured child was only 19 months old. She wandered on the track as if to cross, but changed her course and turned up the track. The court held that the subsequent course made her a trespasser, notwithstanding her tender age, "and, being a trespasser, the defendant owed her no duty, other than to resort to all reasonable means to avoid injuring her

after it, i. e., its servants, became aware of her presence and peril."—142 Ala. 253, 37 South. 795 (110 Am. St. Rep. 29).

We find no evidence in this record that would warrant the trial court in submitting to the jury the question of wanton or willful injury. There is nothing to show that those in charge of the train knew, or had reason to believe, that intestate was between the cars, attempting to cross the couplers, or that he was under the cars; those in charge of the moving train could not have seen him, had they been on the lookout, for the reason that their vision was necessarily obstructed by the box cars standing on the track, between which he was attempting to pass while they were coupled. There is no evidence to show that they knew or ought to have known of his perilous position at the fatal moment, though they may have known that he and the other children were in the playgrounds, and would have to cross the track in order to go to the schoolhouse. There is no evidence to charge them with knowledge that intestate, or any other children, would attempt to crawl over or under the couplings of the cars which were standing upon the track. The speed of the cars or train was not alone sufficient to constitute willful or wanton injury. It therefore follows that the court erred in submitting this question of wantonness or willful injury to the jury, under all the evidence shown by this record, and it recites that it contains all of it.

For this error the judgment is reversed, and the cause is remanded.

Reversed and remanded.

SIMPSON, McCLELLAN, and SOMERVILLE, JJ., concur.