EVENS v. TEXAS PAC.-MISSOURI PAC. TERMINAL R. R. OF NEW ORLEANS.

No. 10329.

Circuit Court of Appeals, Fifth Circuit.

Feb. 17, 1943.

Rehearing Denied March 11, 1943.

Writ of Certiorari Denied May 24, 1943.

See —— U.S. ——, 63 S.Ct. 1175, 87 L.Ed. ——.

Solomon S. Goldman, of New Orleans, La., for appellant.

Leonard B. Levy, of New Orleans, La., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This is a suit for damages for personal injuries sustained by appellant when she was knocked to the pavement in appellee's terminal station in New Orleans, Louisiana. At the conclusion of the trial both parties moved for a directed verdict, but rulings upon the motions were reserved, the cause was submitted to the jury, and a verdict for appellant was returned. Appellee thereupon moved for judgment non obstante veredicto, and, in the alternative, for a new trial on the ground that the verdict was excessive. Both motions were granted, judgment was entered dismissing the suit, and appellant appealed.

At the time the accident occurred, appellant had arrived in New Orleans by train from Dallas, Texas, and was proceeding from the train toward the taxi stand outside the station. She had secured passage on the train by means of a pass, and, in consideration of its use, she had assumed all risk of injury to her person. The parties are agreed that, by reason of her assumption of risk, appellant was entitled to recover only for injuries resulting from willful or wanton negligence of the terminal company,[1] and that the only question presented is whether there was evidence from which the jury might have found that the admitted negligence of appellee was willful or wanton.

Appellant was a lady more than seventy-six years of age. After leaving the train, she was following her red-cap, who was taking her bags to the taxi stand. As she passed through the gate separating the tracks from the vestibule leading to the waiting rooms, she was struck from behind, and seriously injured, by a heavily loaded cart pushed by another red-cap, a servant of appellee. The cart was piled high with luggage, but the red-cap could see over it when standing upright; the cart, as loaded, weighed more than 500 pounds, and was equipped with rubber tires so that its movements were comparatively noiseless. Several bystanders who witnessed the accident realized that the red-cap was going to run into appellant, and shouted warnings to him, but he failed to stop in time. Appellant was never aware of the presence of the red-cap or of her peril. The red-cap testified that he saw appellant moving through the gate directly in the path of the cart when he was twenty-five feet away. He did not look for her again or see her before the accident, but devoted his attention toward seeing that the sides of the cart would clear the gate.

The negligence of the red-cap was not willful, for that term usually connotes an act intentionally done for the purpose of causing injury, but we think the evidence made an issue for determination by the jury as to whether the servant was guilty of wanton negligence. Wanton negligence may be generally defined as an act (or failure to act when there is a duty to act) in reckless disregard of the rights of another, coupled with a consciousness that injury is a probable consequence of the act or omission.[2] It was negligence for the red-cap to propel the heavy vehicle along a passageway occupied by other persons when the luggage impaired his vision of the course that he pursued.

---

[1] New York Central R. Co. v. Mohney, 252 U.S. 152, 40 S.Ct. 287, 64 L.Ed. 502, 9 A.L.R. 496; Virginia Beach Bus Line v. Campbell, 4 Cir., 73 F.2d 97.

[2] Robins v. Pitcairn, 7 Cir., 124 F.2d 734; Hazle v. Southern Pac. Co., C.C., 173 F. 431; Southern Ry. Co. v. Bennefield, 172 Ala. 588, 55 So. 252, 35 L.R.A.,N.S., 420; Jefferson v. King, 12 La. App. 249, 124 So. 589; Anniston Electric & Gas Co. v. Rosen, 159 Ala. 195, 48 So. 798, 133 Am.St.Rep. 32; Stagner v. Craig, 159 Tenn. 511, 19 S.W.2d 234; United Transp. Co. v. Hass, 91 Misc. 311, 155 N.Y.S. 110; Stout v. Gallemore, 138 Kan. 385, 26 P.2d 573; 44 Words and Phrases, Perm.Ed., p. 609 et seq.; 20 R.C.L. 20; Restatement of Law of Torts, Sec. 500.

That negligence became aggravated when—with knowledge that appellant was just ahead of him, that unless she stepped aside she would be run down, and that the heavily loaded cart might cause her serious injuries in the event it should strike her—the red-cap continued to push his vehicle through the gate without looking to see that his way had become clear. Such reckless indifference for the safety of appellant, in full awareness of her peril, supported the express finding of the jury that appellee was guilty of wanton negligence.

For the error in granting the judgment non obstante veredicto, the judgment appealed from is reversed, and the cause is remanded to the district court for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (dissenting).

I am in complete agreement with my brothers' statement of the principle which controls this case:

"Wanton negligence may be generally defined as an act (or failure to act when there is a duty to act) *in reckless disregard of the rights of another, coupled with a consciousness that injury is a probable consequence of the act or omission*" (emphasis mine). That the emphasized words are the crux of the rule, the authorities unanimously attest.

"Reckless Disregard of Safety Defined.

"*The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree or probability that substantial harm will result to him.*" A.L.I. Torts Restatement Negligence, Sec. 500, p. 1293.

"Although conduct to be reckless must be negligent in that it is unreasonable, it must be something more than negligent. It must not only be unreasonable, but it must contain a risk of harm to others in excess of that necessary to make the con- duct unreasonable and therefore, negligent. *It must involve an easily perceptible danger of substantial bodily harm or death and the chance that it will so result must be great.*" id., p. 1294.

"* * * Wilfulness or wantonness imports premeditation or knowledge and consciousness that injury is likely to result from the act done or from the omission to act. * * * Wanton misconduct is positive in nature, while mere negligence is materially negative. A person properly chargeable with wanton misconduct is not simply one who is more careless than one who is merely negligent; wanton misconduct is such as puts the actor in the class with the wilful doer of wrong." 38 Am.Jur., Negligence, Sec. 48, p. 692, 693.

This court, in Wunderlich et al. v. Franklin, 5 Cir., 100 F.2d 164, 167, correctly stated the rule thus:

"In defining wanton negligence, the Alabama *courts emphasize the necessity that the lack of care and disregard of probable consequences be so great that, in its ethical aspects at least, it be analogous to a will or intention to produce the result.* A clear distinction between willful and wanton injuries is maintained on the basis of distinct elements, but the cases *do not lose sight of the fact that, in holding liability for wanton negligence, they are treating the wrongdoer as if he had actually intended the result.*

"* * * It is not wanton negligence to assume that another will exercise due care and caution for his own safety. It has been stated in Alabama Great Southern R. Co. v. Hall, 105 Ala. 599, 17 So. 176, 179: 'Before one can be held guilty of "willful" or "wanton and reckless negligence" the facts must show either that the party knew his conduct would inflict injury or the facts must show that, on account of the attending circumstances, which were known to him, or a knowledge of which he was chargeable with, the inevitable or probable consequences of his conduct would be the infliction of injury, and with reckless indifference to the consequences committed the act or omitted to perform his duty. * * *'"

There were five witnesses, two for defendant and two for plaintiff and there was plaintiff, herself. Their evidence[1] is ex-

---

[1] Summarized, the material part of it was to this effect: Plaintiff testified to her age and infirmity, and to the fact that she was following her red cap through the gate opening on to the runway where you come through to the cabs

ceedingly brief. It presents no points of conflict. My disagreement with the opinion is (1) with *its holding that the evidence, as it states it, makes out a case which* *would support a finding of wantonness within the settled rule,* and (2) with its misleadingly brief and inaccurate statement of the evidence. Because it omits the

and busses that she was carrying a cane and that she felt something hit her in the back and she fell. On cross-examination, she testified that she walked very well with only a slight lameness when she got tired. A. Corca, for plaintiff, testified, "I was standing about 10 feet from the gate which goes out to the street where cabs stand to take people to the L. & N. Station. I seen her going out the iron gate when the porter in the back of her with baggage hit her. He was in back of her. He was coming along slowly at time Mrs. Evens was coming along, and the porter back of her. I hollered, 'Look out', and he kind of pushed her, and she fell on one knee." "Where did he strike Mrs. Evens?" "He didn't strike her, he kind of pushed her in the back." "The baggage buggy was full of luggage. He was coming along slow and about the time the lady got about 6 feet from the gate, the red cap in pushing his cart and going through the gate bumped into the lady in the rear. He didn't hit the lady hard but simply brushed against her, and as she was crippled, the least little knock would bowl her over. I don't believe the red cap saw her before he pushed the cart against her as he was behind it pushing it, and it was piled pretty high. He didn't give any warning as he was pushing through the gate."

Johnnie Johnson testified: "Will you tell what happened that morning in connection with an accident to a lady named Mrs. Evens?" "I unloaded the baggage off the car. After my buggy was loaded with baggage, I proceeded on the right hand tram toward the front. When I got about 25 feet from the gate, there was a lady going through the gate, *and after she got through the gate, I taken my eyes off of her and watched the buggy on both sides to be sure my buggy would clear the gate.* When I got two or three feet from the gate, I pushed my buggy to clear the gate and by that time I seen the restaurant man assisting her by the arm holding her. *"How were you pushing that buggy?" "I was pushing it very slowly." "When you were about to go through the gate, you say you looked on either side?" "Yes, sir." "Did you see anybody in front of your buggy when you looked on either side?" "No, sir, I didn't." "I understood you to say you looked on either side of your buggy to make sure your buggy would clear the gate?" "Yes, sir." "Did you notice anything particular about the lady when* you saw her about 25 or 30 feet away?" "No, sir, I didn't. Her back was turned to me. I was handling the buggy in the way I always do." "Other than that lady, did you see anybody else between you and the gate?" "No, sir, everything was clear." "When you were pushing your buggy through the gate, did you consider the way clear?" "Yes, sir." On cross-examination, he testified he had a full load, that when he was about 25 feet from the gate he saw the lady going through the gate. He did not see a walking stick in her hand. Standing up straight he could see her over the top of the bags. *After he saw her 25 feet away, he went along very slowly. He did not see her any more.* There was nothing between him and her to obstruct his view from the time he first saw her until he got to the gate. "When somebody say, 'Look out', I drew my buggy and made a sudden stop. I had gotten into the gate, and I pulled my buggy back when they yelled."

Robert Biery testified: "I was coming out of the waiting room and I saw the elderly lady had just passed through the gate and the porter was coming up with the valise carrier, *and I saw him slow down in the gate, and I knew he was going to shove into her even at that, and I hollered, but it was too late."* "In what manner was the buggy being pushed?" "He was behind it. Of course, he always had to slow down for the gate there." *"Was he going slowly?" "He was not going fast, and was going extra slow when he was going through the gate because* he would probably scratch the valises going through the gate and probably knock them off." "Then he was going extra slow when he was going through the gate and came in contact with Mrs. Evens?" "Yes, sir." On cross-examination, he testified: "When you first started and looked towards the back, you saw the elderly lady?" "Yes, sir." "You went back in the station and came out again and she was near the gate?" "Yes." "And right behind her moving toward her was the baggage buggy?" "I thought he was going to shove against her, and I yelled. He brushed up against her. She lost her balance and she sat down." "Just at the time somebody yelled, the red cap pushed the buggy forward?" "Yes, and he did not stop the buggy until after someone yelled." "I did not see Johnson when he first saw the lady. When I saw Johnson and she was just this side of the

controlling facts, undisputedly established by the record, which as a matter of law prevent a finding of wanton negligence, the opinion fails to present a true picture of what occurred. The result is that, though these facts are affirmatively established by undisputed evidence and leave in no doubt that there was no wantonness here, the opinion gives the impression that there was no proof on these matters and that what the facts were as to them might be inferred by the jury from the facts the opinion states. These controlling facts are: (1) that Johnson did not know that Mrs. Evens was lame or walking with a stick *and was not conscious at any time that she was in a position of danger;*[2] (2) that Johnson was coming along pushing the buggy slowly, that when he was going through the gate and the buggy came in contact with Mrs. Evens, he was going extra slow, that Johnson did not see Mrs. Evens as he went through the gate and did not know that she was there or in any danger; and, most important of all, (3) that Johnson testified, and no one disputed him, that when he was about to go through the gate, he looked on either side and saw nobody in front of the buggy. "I understood you to say that you looked on either side of your buggy to make sure your buggy would clear the gate?" "Yes, sir." "Did you notice anything particular about the lady when you saw her about 25 or 30 feet away?" "No, sir, I didn't. Her back was turned to me. I was handling the buggy in the way I always do." *"Other than that lady, did you see anybody else between you and the gate?" "No, sir, everything was clear." "When you were pushing your buggy through the gate, did you consider your way clear?" "Yes, sir."*

On this evidence, which shows not merely a failure on the part of plaintiff to sustain her burden of proof that Johnson, *with a consciousness of her danger and a wanton and reckless attitude toward it,* pushed the buggy against her, but affirmatively shows that he did not, it would be impossible under the rule the majority states to make out a case of willful or wanton injury. For the very essence of an injury inflicted recklessly and wantonly is *a consciousness,* on the part of the person

charged with wantonness, *of grave and imminent danger to another from his conduct and a reckless disregard of that danger notwithstanding that consciousness,* and that consciousness was completely absent here. With all deference, I submit that in the face of Johnson's testimony, corroborated by all the evidence in the case, that he considered the way clear when he was pushing his buggy through the gate, there is an entire absence of evidence upon which a jury could found a verdict of wantonness on his part, that is, *that conscious that Mrs. Evens was in danger from his actions, Johnson, with reckless disregard of the consequences,* pushed the buggy against her, and the burden was on plaintiff to prove this. In addition, the evidence is positive and uncontradicted that whatever may be said as to whether his conduct was negligent, it was neither wanton nor reckless. The district judge was right in the view he took that the verdict could not stand. His judgment should be affirmed.

---

gate and he was slowed down and then I hollered, but it was too late. I saw that the lady had her walking stick in her hand using it." Pennebaker, the fifth witness, described the baggage buggy.

[2] Mrs. Evens testified that she walked very well. Johnson testified he did not see that the lady was carrying a stick and that he did not notice anything particular about her when he first saw her.