## BYRD v. CONNELLY.
### Civ. No. 522–P.

United States District Court,
N. D. Florida, Pensacola Division.
Jan. 26, 1954.

R. A. Hepner (of Fisher & Hepner), Pensacola, Fla., for plaintiff.

Thomas D. Beasley, DeFuniak Springs, Fla., for defendant.

DE VANE, Chief Judge.

This is a suit to recover damages for permanent injuries, medical expenses, pain and suffering and other damages sustained by plaintiff by reason of defendant's negligent parking of a motor vehicle upon a highway in Santa Rosa County, Florida in the nighttime. In alternate pleas defendant defends on the ground that the negligence of plaintiff was the sole proximate cause of his injuries and upon the ground that plaintiff's contributory negligence bars his recovery. Defendant filed a counterclaim claiming $100 damages to his vehicle and to the counterclaim plaintiff denied the material allegations thereof. Ownership of the vehicle plaintiff was driving was shown at the trial to be in another and plaintiff, thereupon, withdrew his claim for property damage.

The evidence in this case is in many material respects quite conflicting. The undisputed evidence shows that plaintiff borrowed a car from an acquaintance for the purpose of going from Sneads, Florida to Brewton, Alabama in response to a telegram from his wife that a child of theirs was sick. The testimony is

also undisputed that defendant stopped his truck on the highway in the nighttime for the purpose of filling and lighting his pipe and had been parked on the highway for several minutes when plaintiff drove the automobile which he was operating into the rear of defendant's truck, causing the accident and injuries to plaintiff. Defendant was not injured in the accident.

The testimony is in conflict as to the extent of the fog on the night of the accident. Plaintiff and his witnesses, including the highway patrolman, testified that the night was quite foggy, while defendant and his witnesses testified that while there was some fog it had not settled on the highway and that visibility was good for a long distance. In fact, one of defendant's witnesses testified that he saw the accident approximately one mile down the road in front of him and saw the plaintiff or defendant get out of his vehicle when the accident occurred. The testimony of this witness on this point fairly illustrates the testimony of some of the other witnesses as to the extent of the fog on the night of the accident.

Section 317.44 F.S.A. makes it unlawful outside of a municipality to stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled portion of a highway when it is practicable to stop, park or leave such vehicle off such part of the highway. This accident occurred in the open country and there is no testimony to the effect that defendant could not have parked his truck off the highway for the purpose of filling and lighting his pipe.

Upon the testimony in the case bearing upon the question of the negligence of defendant the court finds and holds that the defendant was guilty of wanton negligence in this case. Evens v. Texas Pac.-Missouri Pac. Terminal R. R. of New Orleans, 5 Cir., 134 F.2d 275.

■ Most of the testimony in the record bears upon the question as to whether plaintiff was guilty of contrib-utory negligence. The physical evidence establishes that plaintiff was not driving at a high rate of speed at the time of the accident. This fact is established by the evidence that little damage was done defendant's truck as a result of the accident and not too much damages was done to the automobile being operated by plaintiff. In other words, the evidence clearly shows that plaintiff had the automobile which he was driving under safe control. Plaintiff testified that he did not see defendant's truck parked on the highway until he was too close to it to stop or otherwise avoid an accident before he hit it. His testimony was to the effect that he was right on the truck before he realized it was parked on the highway. Defendant contends that plaintiff could have seen and should have seen his truck parked on the highway quite some distance and could have realized and should have realized that plaintiff's truck was parked on the highway. This court is unwilling to approve or countenance this defense. One of the greatest "nightmares" of night driving of all of us is the fear of being suddenly confronted with a parked motor vehicle on the highway.

Defendant further charges plaintiff with negligence upon the ground that he was intoxicated at the time of the accident and that his intoxication was the sole proximate cause of the accident. This defense raises a more serious question than that presented by the defense of contributory negligence just disposed of. The undisputed evidence shows that plaintiff's companion, riding with him, was drunk and asleep at the time of the accident. There was still some unconsumed whiskey in the bottle found in the automobile. Plaintiff had had at least one drink out of this bottle as it could be detected on his breath. Defendant accused plaintiff of being drunk to the highway patrolman who investigated the accident and after a complete examination of plaintiff the patrolman reached the decision that plaintiff had not had enough to drink to interfere with

his safe operation of an automobile. Defendant protested this decision of the patrolman so vigorously at the time that the patrolman put the question to the bystanders, who had collected at the scene. The overwhelming majority of the bystanders supported the patrolman's decision that the plaintiff had not consumed enough intoxicating liquor to affect his ability to drive safely. The patrolman then arrested the defendant and refused to charge plaintiff with any traffic violation.

█ In the opinion of this court the patrolman acted wisely in investigating into the sobriety of plaintiff at the time of the accident and the court accepts as correct the patrolman's decision in the matter and holds that plaintiff may not be charged with negligence on the ground that he was under the influence of intoxicating liquor at the time.

█ Upon all the evidence in the case the court finds and holds defendant guilty of wanton negligence and plaintiff free of contributory negligence in the case and that defendant is therefore liable to plaintiff for damages sustained as the result of the accident.

### Damages.

There is some conflict in the evidence as to the nature and extent of the injuries suffered by plaintiff in the accident. At the time of the accident plaintiff gave no indication of being seriously injured and after being discharged by the Road Patrolman, walked some distance (approximately one-half mile) to a store to make arrangements for some one to drive him on to Brewton, Alabama and so far as the record is concerned there is no evidence that plaintiff was ever confined to bed, except during the medical examinations that will be referred to later, until he underwent an operation, approximately three months after the accident. Plaintiff, however, did, from the beginning, complain of severe pains in his back and upon his return to Sneads, Florida went promptly to see Dr. A. E. McQuagge, who, on February 13, 1953, sent plaintiff to the medical center at Pensacola, Florida where he was fully x-rayed and examined by Dr. P. G. Batson, Jr. This x-ray examination of the spine revealed evidence of hypertrophic arthritic changes of the spine, but no conclusive evidence of a recent fracture or of a herniated intervertebral disc. On this occasion plaintiff remained in the medical center from February 13 through 19, 1953.

Subsequently plaintiff's pain in the back became more severe and more local and on March 16, 1953, on the advice of Dr. McQuagge, plaintiff returned to the medical center at Pensacola where he was again examined by Dr. Batson. This examination indicated a ruptured disc between the fourth and fifth lumbar, but no operation was performed at that time. However, it was found that the injury to his spine was showing some effect on his left leg. Plaintiff was advised by Dr. Batson to return to Marianna for further treatment, but if he failed to respond to come back for the operation, which he subsequently did. The operation was successful and while Dr. Fisher, who performed the operation, testified plaintiff was suffering and in the future would suffer a ten percent disability due to the injury, he was of the opinion the condition would not too seriously interfere with plaintiff's future activities.

Defendant called as an expert witness Dr. Wendell James Newcombe to examine the two reports of Dr. Batson (Exhibits A & B to Newcombe's deposition) and to give his opinion as to whether the rupture of the disc between the fourth and fifth lumbar was the result of the accident. Dr. Newcombe testified that it was his opinion that the disc was in process of degeneration before the accident and the accident had nothing whatever to do with the rupture, except possibly to hasten it along. This testimony is in direct conflict with that of Dr. Fisher. The conflict in the testimony of these two physicians is important primarily in connection with whether plaintiff is en-

titled to recover for losses sustained by reason of his inability to work between January 31 and August 8, 1953.

■ In addition to the ground stated above, counsel for defendant also contends that plaintiff is not entitled to recover loss of earnings from the date of the accident to August 8, 1953 for the reason he does not specifically plead for them in the complaint—citing a Florida case in support of his contention. Assuming, but not deciding, this may be the law in Florida courts, it is not the law in this court. While the question of liability in this case is controlled by Florida law, the question of pleading is controlled entirely by the Federal Rules of Civil Procedure, 28 U.S.C.A., and the complaint in this case is sufficient to cover all elements of damage suffered by plaintiff as the result of the accident.

The evidence discloses that plaintiff earned approximately $300 net per month, and that he was completely incapacitated, in so far as his work was concerned, from the date of the accident to August 8, 1953, suffering a total net loss of earnings during this period of approximately $1,800. Upon the record made on this issue the court holds plaintiff is entitled to recover his loss during this period.

■ In addition to the loss enumerated above plaintiff incurred $622.65 medical and hospital expenses. During the six months when plaintiff was completely incapacitated and for some time thereafter he endured considerable pain and suffering. Taking into consideration the entire record in this case upon the question of damages, including the medical and hospital expenses, the loss of earnings, the probable loss of some future earnings and the pain and suffering endured by plaintiff as a result of the accident, the court finds and holds that plaintiff is entitled to recover the sum of $7,422.65.

A final judgment will be entered herein in conformity with this Memorandum Decision.