# NEW YORK CENTRAL RAILROAD COMPANY *v.* MOHNEY.

## CERTIORARI TO THE COURT OF APPEALS OF LUCAS COUNTY, STATE OF OHIO.

No. 196.   Argued January 27, 1920.—Decided March 1, 1920.

A railroad employee was injured through a collision while traveling on his company's line between points in Ohio by means of a pass, good only between those points and within that State and containing a release from liability for negligence. His purpose was to continue the journey, partly over a line of another carrier in Ohio on which he would pay fare, and thence over one of his company into another State by means of another pass, the terms of which were not disclosed by the evidence. *Held,* that his travel, at time of injury, was intrastate, so that the validity of the release depended on the laws of Ohio. P. 155.

A stipulation on a free pass purporting to release the carrier from all liability for negligence is ineffective where injury to the passenger results from the wilful and wanton negligence of the carrier's servants. P. 157.

Affirmed.

THE case is stated in the opinion.

*Mr. Howard Lewis,* with whom *Mr. Frederick W. Gaines* was on the brief, for petitioner.

*Mr. Albert H. Miller,* with whom *Mr. A. Jay Miller* and *Mr. Charles H. Brady* were on the brief, for respondent.

MR. JUSTICE CLARKE delivered the opinion of the court.

The respondent, whom we shall refer to as the plaintiff, brought suit against the petitioner, defendant, to recover damages for severe injuries which he sustained in a rear-end collision on defendant's railroad, which he averred was caused by the gross negligence of the engineer of the

train following that on which he was a passenger, in failing to look for and heed danger signals, which indicated that the track ahead was occupied.  The plaintiff was employed by the defendant as an engineer, with a run between Air Line Junction, at Toledo, and Collinwood, a suburb of Cleveland, wholly within the State of Ohio.  As an incident to his employment he was given an annual pass, good between Air Line Junction and Collinwood, which contained the release following: "In consideration of receiving this free pass, each of the persons named thereon, using the same, voluntarily assumes all risk of accidents, and expressly agrees that the company shall not be liable under any circumstances, whether of negligence of itself, its agents, or otherwise, for any injury to his or her person, or for any loss or injury to his or her property; and that as for him or her, in the use of this pass, he or she will not consider the company as a common carrier, and liable to him or her as such.

"And, as a condition precedent to the issuing and use thereof, each of the persons named on the face of this pass states that he or she is not prohibited by law from receiving free transportation, and that the pass will be lawfully used."

Having been informed that his mother had died at her home near Pittsburgh, Pennsylvania, the plaintiff, desiring to attend her funeral, applied to the defendant for, and obtained, a pass for himself and wife from Toledo to Youngstown, Ohio, via Ashtabula, and was promised that another pass for himself and wife would be left with the agent of the company at Youngstown, good for the remainder, the interstate part, of the journey to Pittsburgh.  But the line of the defendant via Ashtabula to Youngstown was much longer and required a number of hours more for the journey than it did to go via Cleveland, using the Erie Railroad from that city to Youngstown, and for this reason, the record shows, the plaintiff Mohney,

before leaving home, decided that his wife should not accompany him and that he would make the journey by a train of the defendant, which used its own rails to Cleveland, and from Cleveland to Youngstown used the tracks of the Erie Railroad Company, and at Youngstown returned to the road of the defendant, over which it ran to Pittsburgh. The transportation which he had received via Ashtabula could not be used over the shorter route and therefore the plaintiff presented his annual pass for transportation from Toledo to Cleveland, intending to pay his fare from Cleveland to Youngstown over the Erie Railroad, leave the train at the Erie station at Youngstown, inquire by telephone as to the time and place of the burial of his mother, and then go to the New York Central station, a half mile away, obtain the pass which was to be left there for him, and go forward to Pittsburgh on the next convenient train.

The train on which Mohney was a passenger was wrecked between Toledo and Cleveland. It had come to a stop at a station and the second section of the train ran past two block signals, indicating danger ahead, and collided with the rear car of the first section, in which Mohney was riding, causing him serious injury.

The case was tried on stipulated facts and the testimony of the plaintiff. The trial court concluded that Mohney, at the time he was injured, was on an intrastate journey using an intrastate pass, and that by the law of Ohio the release upon it was void as against public policy. Thereupon, a jury being waived, the court entered judgment in plaintiff's favor.

The State Court of Appeals, differing with the trial court, concluded that Mohney was an interstate passenger when injured and that the release on the pass was valid, under the ruling in *Charleston & Western Carolina Ry. Co.* v. *Thompson,* 234 U. S. 576. But the court went further and affirmed the judgment on two grounds; by a divided

court, on the ground that the pass was issued to Mohney as part consideration of his employment, and, all judges concurring, for the reason that "we are clearly of the opinion that the negligence in this case, under the evidence, was willful and wanton." For these reasons it was held that the release on the pass did not constitute a defense to the action.

The Supreme Court of the State denied a motion for an order requiring the Court of Appeals to certify the record to it for review and the case is here on writ of certiorari.

The propriety of the use of the annual pass by Mohney for such a personal journey and that the release on it was not valid under Ohio law, were not questioned, and the sole defense urged by the Railroad Company was, and now is, that his purpose to continue his journey to a destination in Pennsylvania rendered him an interstate passenger, subject to federal law from the time he entered the train at Toledo and that the release on the pass was valid, under 234 U. S. 576, *supra.*

The three freight cases on which the defendant relies for its contention that the plaintiff was an interstate passenger when injured, all proceed upon the principle that the essential character of the transportation and not the purpose, or mental state, of the shipper determines whether state or national law applies to the transaction involved.

Thus, in *Coe* v. *Errol,* 116 U. S. 517, the owner's state of mind in relation to the logs, his intent to export them, and even his partial preparation to do so, did not exempt them from state taxation, because they did not pass within the domain of the federal law until they had "been shipped, or entered with a common carrier for transportation to another State, or [had] been started upon such transportation in a continuous route or journey."

In *Southern Pacific Terminal Co.* v. *Interstate Commerce Commission and Young,* 219 U. S. 498, 527, the cotton seed

cake and meal, although billed to Galveston, were "all destined for export and by their delivery to the Galveston, Harrisburg and San Antonio Railway they must be considered as having been delivered to a carrier for transportation to their foreign destination. . . . The case, therefore, comes under *Coe* v. *Errol*, 116 U. S. 517." The mental purpose of Young, and his attempted practice by intrastate billing, was to keep within the domain of the state law, but his contracts, express and implied, brought the discrimination complained of in the case within the scope of the Interstate Commerce Act.

In *Ohio Railroad Commission* v. *Worthington*, 225 U. S. 101, the Commission attempted to regulate the rate on "lake-cargo coal," because it was often billed from the mines to Huron, or other ports within the State, but this court found that the established "lake-cargo coal" rate was intended to apply, and in practice did apply, only "to such coal as [was] in fact placed upon vessels for carriage beyond the State" and obviously "by every fair test the transportation of this coal from the mine to the upper lake ports is an interstate carriage." For this reason the enforcement of the order of the state commission was enjoined as an attempt to regulate and control interstate commerce. Here again it was the committing of a designated kind of coal to a carrier for transportation in interstate commerce that rendered the federal law applicable.

To what extent the analogy between the shipments of property and the transportation of passengers may profitably be pressed, we need not inquire, for in this case the only contract between the carrier defendant and the plaintiff was the annual pass issued to the latter. This written contract, with its release, is the sole reliance of the defendant. But that contract in terms was good only between Air Line Junction and Collinwood, over a line of track wholly within Ohio, and the company was charged

with notice when it issued the pass that the public policy of that State rendered the release upon it valueless. The purpose of the plaintiff to continue his journey into Pennsylvania would have been of no avail in securing him transportation over the Erie line to Youngstown, for that he must pay the published fare and very surely the release on the pass to Collinwood would not have attached to the ticket to Youngstown. Whether there was a similar release on the pass to Pittsburgh, which Mohney expected to get at Youngstown, the record does not disclose and it is of no consequence whether there was or not. The contract which the defendant had with its passenger was in writing and was for an intrastate journey, and it cannot be modified by the purpose of Mohney to continue his journey into another State, under a contract of carriage with another carrier, for which he would have been obliged to pay the published rate, or by an intended second contract with the defendant in terms which are not disclosed. The mental purpose of one of the parties to a written contract cannot change its terms. *Southern Pacific Co.* v. *Arizona,* 249 U. S. 472. For these reasons the judgment of the trial court was right and should have been affirmed.

But the Court of Appeals affirmed the judgment on two grounds, one of which was that all of the judges were "clearly of the opinion that the negligence in the case, under the evidence, was willful and wanton." This court does not weigh the evidence in such cases as we have here, but it has been looked into sufficiently to satisfy us that the argument that there is no evidence whatever in the record to support such a finding cannot be sustained.

A carrier by rail is liable to a trespasser or to a mere licensee wilfully or wantonly injured by its servants in charge of its train (Commentaries on the Law of Negligence, Thompson, §§ 3307, 3308, and 3309, and the same sections in White's Supplement thereto), and a sound public policy forbids that a less onerous rule should be applied to a

passenger injured by like negligence when lawfully upon one of its trains. This much of protection was due the plaintiff as a human being who had intrusted his safety to defendant's keeping. *Southern Pacific Co.* v. *Schuyler*, 227 U. S. 601, 603; *Chicago, Rock Island & Pacific Ry. Co.* v. *Maucher*, 248 U. S. 359, 363.

The evidence in the record as to the terms and conditions upon which the pass was issued to the plaintiff is so meager that, since it is not necessary to a decision of the case, we need not and do not consider the extent to which the case of *Charleston & Western Carolina Ry. Co.* v. *Thompson*, 234 U. S. 576, is applicable to an employee using a pass furnished to him seemingly as a necessary incident to his employment.

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE DAY and MR. JUSTICE VAN DEVANTER concur in the result, being of opinion that Mohney was using the annual pass in an interstate journey and that to such a use of the pass the Ohio law was inapplicable, but that the releasing clause on the pass did not cover or embrace his injury because the latter resulted from wilful or wanton negligence, as to which such a clause is of no force or effect.