SABOL v. CHICAGO & NORTH WESTERN RAILWAY CO.

1. CARRIERS—RAILROADS—RELEASE FROM LIABILITY FOR NEGLIGENCE NOT APPLICABLE TO WILFUL NEGLIGENCE.

Employment contract between show company and employees releasing employer and railroad company from liability for negligence, and also transportation contract between railroad company and show company providing that employees operating train should be deemed servants of show company, and that railroad company should not be liable for their negligence are not applicable where negligence relied on is wilful and wanton.

2. SAME—RAILROAD MAY STIPULATE AGAINST LIABILITY FOR ORDINARY NEGLIGENCE IN CAPACITY OTHER THAN COMMON CARRIER.

Railroad company in contract made not as common carrier but as hirer of motive power has right to stipulate against liability for personal injuries caused by ordinary negligence of its employees, in absence of statute prohibiting same.

3. SAME—RAILROADS—WILFUL NEGLIGENCE.

In action by employee of show company against railroad company for personal injuries due to negligence of trainmaster in charge of train, evidence *held*, sufficient to establish that trainmaster was guilty of wilful negligence.

4. SAME — RAILROADS — NEGLIGENCE — TRAINMASTER—MASTER AND SERVANT—SCOPE OF EMPLOYMENT.

Railroad company would not be liable for negligence of its trainmaster unless, at time of accident, he was its servant acting within scope of his employment.

5. SAME.

Where, under transportation contract releasing railroad company from liability for negligence of its employees, it was under no contractual obligation to send its trainmaster to see that employees properly performed their duties, it did not relinquish control over him, and he was its servant while so engaged, and therefore it is responsible for his negligence.

6. PLEADING—DECLARATION—WILFUL MISCONDUCT.

Objection that declaration failed to charge wilful misconduct is without merit, where it alleged facts amounting to wilful misconduct.

7. SAME—AVERMENTS IN DECLARATION—DAMAGES.

Conditions traceable to injury, and which naturally follow from it, need not be specifically averred in declaration, in order to recover therefor.

8. DAMAGES—PLEADING—EVIDENCE.

Testimony by doctors that plaintiff's kidneys and heart were affected by injuries sued on was admissible, although not averred in declaration.

9. NEW TRIAL—GREAT WEIGHT OF EVIDENCE.

Motion for new trial on ground that verdict was against great weight of evidence, *held*, properly denied.

10. DAMAGES—EXCESSIVE VERDICT.

Where plaintiff 23 years of age with life expectancy of 40.17 years and earning about $25 a week was so severely scalded through defendant's negligence that about one-fourth of his body is covered with elevated permanent scars which are tender and sensitive, causing intense pain and inconvenience, and rendering him totally and permanently disabled, a verdict of $18,000 is not excessive.

Error to Gogebic; Driscoll (George O.), J.  Submitted June 11, 1931.  (Docket No. 1, Calendar No. 35,605.)  Decided October 5, 1931.

Case by Steve Sabol against Chicago & North Western Railway Company, an Illinois corporation, and others for personal injuries received while on a circus train.  Verdict and judgment for plaintiff.  Defendant railway and another bring error.  Affirmed.

*Derham & Derham* (*Baird & Rummel*, of counsel), for plaintiff.

*Ryall & Frost* (*Waples & Waples,* of counsel), for defendants.

McDonald, J. This is an appeal by the defendants, Chicago & North Western Railway Company and F. W. Loos, train master, from a circuit court judgment in an action to recover damages for personal injuries the plaintiff received while employed in a dining car of a circus train which was being moved at the time on the defendants' tracks at Iron Mountain, Michigan. The train consisted of 29 cars made up of 11 flat cars, 9 stock cars, and 9 coaches. When it reached Iron Mountain, the train was broken into three sections. The section containing the coaches to which the dining car was attached was left standing on an inclined track. The stock cars were placed on a siding. The flat car section returned to move the coaches. After three or four unsuccessful attempts at coupling, the movement was abandoned and the engine with the flat cars pulled away. In the meantime, the bumping of the coaches had started them moving slowly down the grade. They gradually increased in momentum, caught up with the flat cars two blocks away, and crashed into them. The shock overturned a large coffee urn, and the plaintiff who was working nearby was drenched with its boiling contents. He was severely scalded and sustained serious injuries. At the time of the accident he was working for the Western Show Company, Inc., a Delaware corporation, under a written employment contract which purported to release his employer and the railway company from liability for injuries caused by their negligence. The circus train was being moved over the defendant railway company's tracks under a special contract with the "101 Ranch," whose prop-

er corporate name was "Miller Brothers 101 Ranch Trust," and whose trade name was "Miller Brothers 101 Ranch Real Wild West Show." The Western Show Company leased the physical property and trade-name of the Miller Brothers 101 Ranch Trust, and was in possession and control at the time of the accident. The transportation contract stipulated that the railway company would furnish locomotive engines, engineers, firemen, and other employees to enable the show company to transport its circus and equipment by special train, and that, while so employed, they should be deemed servants of the show company and that the railway company would not be liable for their negligence. The contract contained a recital that it was not made by the railway company as a common carrier but as a hirer of motive power and men to operate it.

On the trial, both the employment contract and the special transportation contract were offered by the defendants as a complete bar to the plaintiff's recovery. They were not so regarded by the court, who permitted the case to go to the jury on the issue of negligence. A verdict in favor of the plaintiff for $18,000 was rendered against the railway company and its trainmaster, F. W. Loos, who was in charge of the movements of the cars at the time of the accident. Liability against the other defendants, who were all members of the train crew, was abandoned at the close of the proofs.

1. The first question to be considered is the effect of the contracts on plaintiff's right to recover in this action.

The trial court excluded the employment contract as evidence on the ground that the plaintiff's signature was obtained by fraud; and the plaintiff claims that the other contract is not effective as a

defense because his employer, the Western Show Company, was not a party to it. We need not discuss these questions, because, though both contracts be considered as valid and binding on the plaintiff, they have no application in a case such as this where the negligence relied on consists of wilful and wanton misconduct, commonly called wilful negligence. The term is self-contradictory, but courts and text-writers have given it a definite meaning in the law of negligence and it is generally understood. *Gibbard* v. *Cursan,* 225 Mich. 311.

There is no doubt as to the right of a railway company in a contract not made in its capacity as common carrier to stipulate against liability for injuries caused by the ordinary negligence of its employees. In a few States such contracts are declared to be null and void by statute; in some others courts have held them to be invalid as against public policy; but in the Federal courts and in Michigan where there is no statute on the subject their validity is quite generally upheld. *McCree* v. *Davis,* 280 Fed. (C. C. A.) 959; *Coup* v. *Railway Co.,* 56 Mich. 111 (56 Am. Rep. 374); *Mehegan* v. *Railway Co.,* 178 Mich. 694 (L. R. A. 1915E, 1170); *Weaver* v. *Railroad Co.,* 139 Mich. 590, 599 (5 Ann. Cas. 764).

But no court has sustained their validity beyond protection from liability for injuries caused by ordinary negligence. There seems to be no Michigan case directly in point, but *McCree* v. *Davis,* a leading Federal authority, states the rule as follows, citing *New York Central R. Co.* v. *Mohney,* 252 U. S. 152 (40 Sup. Ct. 287, 9 A. L. R. 496):

"It is a settled rule of law that a contract purporting to release the defendants from all liability for negligence would be ineffective as a defense, where the injury to the plaintiff results from such

wilful and wanton negligence on the part of the servants of the defendant.''

In the instant case there is ample evidence that defendant Loos, who was directing the movement of the cars at the time of the accident, was guilty of wilful negligence. In denying a motion to direct a verdict in favor of defendants, the trial court correctly characterized his conduct as follows:

''There was testimony justifying the inference that Loos saw the coaches start to creep and knew they were insecurely fastened but made no effort to stop them and walked away in disregard of the consequences to the occupants of these cars as well as to others down in the yard. His conduct was such as to be put in the class with the wilful doer of wrong. *Gibbard* v. *Cursan,* 225 Mich. 311. He caused this string of cars, laden with human beings, to be started down that inclined track towards another string of cars upon and near which many other persons were and then, with supreme indifference of the consequences, walked away and let them roll. He was not only guilty of negligence, but of downright recklessness amounting to wanton and wilful misconduct.''

In *Gibbard* v. *Cursan, supra,* the court, quoting from the text of 20 R. C. L. p. 145, stated the elements necessary to constitute wilful misconduct as follows:

''(1)   Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.''

The evidence shows all of these elements to be present in the instant case. The defendant Loos was in charge of the movements of the train when it reached the yards at Iron Mountain. He had knowledge of the situation. He knew the coaches were standing on an inclined track and were occupied by people of the circus. He saw them move forward when he caused them to be bumped in attempting to make a coupling. He knew the probable result if they were allowed to run wild down the track. It was a situation clearly apparent to a man of ordinary prudence. It was in his power to stop the coaches by holding them back with the engine attached to the flat cars until the wheels could be blocked. Instead of using the means at hand he signaled the flat cars ahead and walked away. His conduct was not that of an ordinarily prudent man. Rather, it showed a reckless and wilful disregard of the consequences in a situation where the exercise of ordinary care was necessary to avert injury to others.

As he was guilty of wilful negligence, the contracts releasing the railroad from liability have no application and are not effective to bar the plaintiff's recovery.

However, the railway company was not liable for the negligence of the defendant Loos unless, at the time of the accident, he was its servant acting within the scope of his employment; and that brings us to the second question presented by the record.

2. Whose servant was Mr. Loos?

He was not a member of the crew furnished by the railroad company under its contract with the circus company. He was trainmaster of the division over which the cars were moved. The superintendent sent him with the train to see that the members of the crew performed their duties. He testified:

"I was with the train in a supervisory capacity to see that this crew who was in the service of the show company performed their duties in a manner satisfactory to the show company."

The railroad company had hired its locomotive power and a number of servants to the circus company for a particular work. It relinquished all control over them and was released from any responsibility for the manner in which they performed that work. It was under no contractual obligation to send its trainmaster to see that they properly performed their duties. It did not relinquish control over him and could have recalled him at any time without breaching its contract with the circus company. At the time of the accident he was doing the railroad company's business and was under its control. He was its servant. And it was responsible for his negligence. *Rockwell* v. *Railway Co.*, 253 Mich. 144.

3. It is claimed that the declaration does not allege wilful misconduct.

No objection was made in the trial court to the insufficiency of the declaration in this regard. It is here raised for the first time. However, there is no merit to the objection. The declaration avers facts which amount to wilful misconduct.

4. It is next urged that the court erred in receiving medical testimony of injuries not alleged in the declaration.

The declaration alleged that the plaintiff's back and entire nervous system were permanently injured but made no mention of injuries to his kidneys and heart. Over the defendant's objection two doctors were permitted to testify that, as a result of his injuries, plaintiff was afflicted with nephritis and myocarditis, diseases of the kidneys and heart. According to their testimony, these were conditions

which naturally followed from severe burns involving large areas of the body. It has been held that conditions traceable to the injury and which naturally follow from it need not be specifically averred in the declaration. *Montgomery, Adm'r,* v. *Railway Co.,* 103 Mich. 46 (29 L. R. A. 287).

5. Error is claimed because of the denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence and is excessive.

The defendants called no witnesses to show how the accident happened. The testimony introduced by the plaintiff is conclusive on that question. Mr. Loos was called, under the statute (3 Comp. Laws 1929, § 14220), for cross-examination, but refused to tell the court and jury what he did to avert the injury to the plaintiff. He was asked:

"*Q.* What did you do there at the head end of these coaches? * * *

"*A.* I decline to answer on the ground that it is incriminating evidence.

"*Q.* You are the man who made the motions to the engine crew, aren't you? * * *

"*A.* I decline to answer that question on the same grounds that I did the other. * * *

"*Q.* Did you see any one signal the engineer?

"*A.* I decline to answer that question. * * *

"*Q.* Did you see any one block any of those wheels when that bunting around there was being done?

"*A.* I decline to answer that (question)."

We think the great weight of the evidence was with the plaintiff and that the court rightly denied the motion for a new trial on that ground.

6. Is the verdict for $18,000 excessive?

The testimony shows that at the time of the accident the plaintiff was 23 years of age. His life

expectancy was 40.17 years. His earnings were about $25 a week. He was strong and able-bodied and had always worked at common labor. As a result of his injuries he has become totally and permanently disabled. In describing his condition, the trial court said:

"His injuries are most serious. About one-fourth of his body is covered with elevated permanent scars of a color and appearance resembling rough birth marks. These scars are tender and sensitive. They are irritated and become painful by contact with his clothing. They break open and cause intense pain and inconvenience."

Medical testimony shows that his life has been shortened, that because the burns involve such a large area of his body he has contracted a nephritis and myocarditis which will grow worse with time. Because of this condition, because of his disfigurement, his inability to labor, the intense and prolonged agony he has undergone, and the pain he will endure in the future, his case justifies very substantial damages. In the circumstances a verdict of $18,000 is not excessive.

We have considered all of the other questions presented by the record. They are without merit and need not be discussed.

The judgment is affirmed, with costs to the plaintiff.

BUTZEL, C. J., and WIEST, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.