**David Charles MORRIS, as the Personal Representative of the Estate of Suzanne Prassinos Morris, Deceased, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC., a Delaware corporation; and McDonnell Douglas Corporation, a Maryland corporation, Defendants.**

Civ. A. No. 89–CV–70326–DT.

United States District Court,
E.D. Michigan, S.D.

Oct. 13, 1989.

Charles Brewer, Phoenix, Ariz., Stanley Chesley, Cincinnati, Ohio, Lee Kreindler, New York City, Gerald Lear and Thomas Meehan, Washington, D.C., and Richard Schaden, Birmingham, Mich., for Plaintiffs' Steering Committee.

Carroll E. Dubuc, Laxalt, Washington, Perito and Dubuc, Washington, D.C., for defendant Northwest Airlines.

John J. Hennelly, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., and Donald E. Shely, Dykema Gossett, Detroit, Mich., for defendant McDonnell Douglas.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

Plaintiff, David Charles Morris,[1] filed the current motion, asking this Court to invalidate the provisions of Suzanne Morris' travel ticket to the extent that it exonerates Northwest from liability for any ordinary negligence for her death.[2] Each of the Defendants oppose his motion. For the following reasons, Morris' motion must be denied.

### I

In their initial opposition papers, the Defendants generally asserted that Morris' motion, at best, was procedurally premature, in that Practice and Procedure Order Number 2 had precluded the parties from conducting full discovery on this issue and, therefore, his application for relief should be rejected for reasons of timeliness. The Court was not persuaded by these arguments but, on June 23, 1989, issued an order which provided:

[A]lthough Morris' application for dispositive relief is not premature, this Court will not require Northwest or MDC to file a response to the instant motion until July 28, 1989. An obligation to file a response within the requisite ten (10) day

---

1. David Charles Morris appears in the instant lawsuit as the personal representative of the Estate of Suzanne Morris, an off-duty flight attendant for Northwest who, while traveling from her work base in Detroit to her home in Phoenix, was fatally injured as a passenger aboard Northwest Flight 255 which crashed on August 16, 1987.

2. The pleading by the Plaintiff is entitled: "Motion for Summary Judgment Re[garding] 'Exculpatory Clause' of Northwest Airlines 'Employee Easy–Write Travel Pass.'"

period as mandated by Local Rule 17(g) would unduly strain the resources of all parties under the circumstances of this case.

*Order*, at 3 (E.D.Mich. June 23, 1989). Accordingly, on July 28, 1989, Northwest and MDC filed their respective substantive responses to the pending motion.[3] Thereafter, the Plaintiff filed a Second Reply Brief, entitled "Refinement of Issues now before the Court."

## II

It is not contested that Suzanne Morris was a domestic flight passenger on August 16, 1987. At the time of the accident, she was traveling on an Employee Easy–Write Travel Pass (Travel Pass), which contained the following language:

> The holder agrees to assume all risk of accident and loss of every character, including personal injury, death and loss or damage to property and agrees that Northwest Airlines, Inc. shall not be liable for any such loss, damage, injury or death, whether caused by negligence of Northwest Airlines, Inc. or its agents or otherwise.

*See* Declaration of Paul H. Dinger, P. 6, Exhibit A.

In his motion, the Plaintiff asks this Court to declare that the "exculpatory clause of the … Travel Pass … is legally defective and void as a matter of … federal and state law." Plaintiff's Second Rely Brief at 15. As such, he seeks declaratory relief under 28 U.S.C. Section 2201 which provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Such a request may be properly brought under *Fed.R.Civ.P.* 56(a).

## III

Plaintiff asserts that federal law preempts any potentially conflicting state

law in this area by virtue of the Supremacy Clause of the Constitution.

In analyzing this contention, the Court notes that there are a plethora of cases which report that "free passes issued by interstate carriers and the conditions attached thereto are governed by federal law, not state law." *Thompson v. National Railroad Passenger Corporation*, 621 F.2d 814, 819–20 (6th Cir.1980), *cert. denied*, 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980); *See Francis v. Southern Pacific Co.*, 333 U.S. 445, 449–50, 68 S.Ct. 611, 613–14, 92 L.Ed. 798 (1947); *Kansas City Southern R. Co. v. Van Zant*, 260 U.S. 459, 468, 43 S.Ct. 176, 177, 67 L.Ed. 348 (1923); *Charleston & Western Caroline R. v. Thompson*, 234 U.S. 576, 578, 34 S.Ct. 964, 965, 58 L.Ed. 1476 (1914); *Uhlik v. Penn Central Railroad Co.*, 459 F.2d 460, 461 (6th Cir.1972). This principle was originally applied in the area of railroad employee passes, but was subsequently extended to airline employee passes in *Braughton v. United Air Lines, Inc.*, 189 F.Supp. 137, 141 (W.D.Mo.1960). *See also, Sims v. Northwest Airlines, Inc.*, 269 F.Supp. 272, 273 (S.D.Fla.1967).

MDC is the only party who asserts that federal preemption is inappropriate. MDC, *citing Braughton, supra*, acknowledges the existence of the reported cases which support federal preemption but argues that these findings of federal preemption were based upon the Civil Aeronautics Act which was a comprehensive effort by Congress to regulate the airlines. MDC posits that since the federal deregulation of the airline industry, the basis for federal preemption no longer exists and the applicable state law—not the federal law—must be the source for an evaluation of Morris' motion.

The Court is not persuaded that federal deregulation has had any legal effect upon the application of the federal common law to a dispute such as the present one. It should be noted that, despite a significant deregulation of the airline industry, an express statutory preemption continues to be

---

**3.** On June 19, 1989, another Plaintiff, Janet D. Cook, filed a joinder in the present motion. On July 28, 1989, Northwest filed an objection to Cook's motion for the same reasons that were

set forth in Morris' motion. Accordingly, this order will apply equally to *Janet D. Cook v. Northwest and McDonnell Douglas Corporation*, 89–CV–71310–DT.

embodied in 49 U.S.C.App. § 1305(a)(1). This statute, which was enacted during the same year as the federal deregulation of the airline industry, and amended as recently as 1984, provides:

> [N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

49 U.S.C.App. Section 1305(a)(1). Thus, Congress obviously considered the issue of federal preemption as recently as five years ago and determined that it was still viable legislation. *See, Hughes Air Corp. v. Public Utilities Commission,* 644 F.2d 1334 (9th Cir.1981). Hence, MDC's argument on this issue must be rejected.

## IV

■ Applying the federal common law to the facts in the present controversy, the Court finds that the exculpatory language within the Decedent's travel pass is valid as a matter of law. In *Thompson, supra,* the plaintiff, an employee of the owner of the railroad track, was injured while traveling as a passenger in a railroad car on an employee pass that had been issued by the defendant corporation. In a subsequently filed lawsuit, the plaintiff's claim for damages was resisted by the defendant who produced a release of liability clause within the employee pass. Thus, according to the defendant, precluded any recovery of compensatory damages. The trial court disagreed. On appeal, the Court of Appeals for the Sixth Circuit, acknowledged and reaffirmed the long standing federal common law that "a provision in a gratuitiously issued pass which released the railroad from liability due to negligence was valid." *Thompson,* 621 F.2d at 820. Thereafter, it concluded that "if an employee is traveling on a free pass, the Court will give effect to any release of liability provision contained therein. However, if there is consideration

for the pass, the release of liability provision is not valid." *Id.*

In *Northern Pacific Railroad Co. v. Adams,* 192 U.S. 440, 453, 24 S.Ct. 408, 411, 48 L.Ed. 513 (1904), *quoted with approval* in *Francis v. Southern Pacific Co.,* 333 U.S. at 448 n. 2, 68 S.Ct. at 612 n. 2, the Court wrote:

> The railway company was not, as to Adams, a carrier for hire. It waived its right as a common carrier to exact compensation. It offered him the privilege of riding in its coaches without charge if he would assume the risk of negligence. He was not in the power of the company and obliged to accept it. They stood on equal footing. If he had a desire to hold it to its common law obligations to him as a passenger, he could have paid his fare.... [I]t was a contract which neither party was bound to enter into, and yet one which each was at liberty to make, and no public policy was violated thereby.

*See also, Kansas City Southern Railway Co. v. Van Zant,* 260 U.S. 459, 469, 43 S.Ct. 176, 177, 67 L.Ed. 348 (1922).

Thus, the basis for upholding these exculpatory clauses, despite the apparent violation of public policy, is that these passes are gratuitous and inure to the benefit of the employee. Therefore, an employee who travels on such a pass is a "gratuitous licensee and as such the duty owed her by the airline was not to willfully or wantonly injure her." *Sims v. Northwest Airlines, Inc.,* 269 F.Supp. at 273.

In the matter that is now before this Court, the Plaintiff argues that, based upon the erosion of the invitee/licensee distinction along with the airline deregulation policies and the tariff system which has been imposed thereunder, this Court should not adopt the *Sims* principle.

Existing Supreme Court and Sixth Circuit precedent, as previously cited, hold that exculpatory clauses within employee passes are valid as long as there is no consideration for the pass. Accordingly, this Court declines to ignore forty years of precedent and, hence, it will not invalidate the exculpatory clause, as requested.

## V

Plaintiff also asserts that deregulation has eliminated any need for the tariff system. Under the regulation by the federal government, there were limited situations in which an airline could fly a person for less than the published fare. One such situation was the ability of air carriers to provide free passes to their employees. *See*, 49 U.S.C.App. § 1373(b)(2), *repealed by*, 49 U.S.C.App. § 1551(a)(2)(A). Plaintiff contends that, because the air carriers (1) are no longer bound to charge tariff rates, and (2) are permitted to provide low or free fares to any passenger, the underlying reasoning for those long line of cases which have upheld these exculpatory clauses is no longer applicable.

In *First Pennsylvania Bank v. Eastern Airlines, Inc.*, 731 F.2d 1113 (3d Cir.1984), the Court considered the effect, if any, of airline deregulation on the application of federal common law, which would have the effect of limiting the liability of a carrier to an agreed upon value of the goods being transported. In that case, the airline had lost millions of dollars which belonged to the Bank. Liability for any lost property was limited to $500.00 by Eastern Airlines. This limitation had long been upheld by the federal courts under the "released value doctrine." Because of the liability limitation, the trial court limited the Bank to a recovery of only $500.00.

On appeal, the Bank argued that (1) the federal common law, which upheld such limitations on liability under the "released value doctrine," should no longer apply in light of deregulation, and (2) state law should be utilized to strike down the liability limitation clause. The Third Circuit Court of Appeals determined that deregulation had no impact on the application of the federal common law to this issue. The Court reasoned that the most important aspects of airline regulation, which had been repealed by deregulation, were the provisions which (1) erected barriers to entry into the field by requiring all air carriers to acquire a certificate of public convenience and necessity from the Civil Aeronautics Board (CAB) before engaging in air transportation, 49 U.S.C.App. § 1371, *repealed by*, 49 U.S.C.App. § 1551(a), (2) required air carriers to charge reasonable rates, fares and charges, and (3) mandated air carriers to file tariffs with the CAB which would report the rates charged. Under such a federal statutory directive, the carrier was bound to charge the recorded rate after it had been approved by the CAB. Moreover, the CAB had the authority to reject any unreasonable rate to establish a proper rate, *see*, 49 U.S.C.App. § 1373, 1374 and 1382, *repealed by*, 49 U.S.C.App. § 1551.

It was the opinion of the Third Circuit Court of Appeals that deregulation, with respect to fares and the reasonableness of tariffs, "merely eliminated the need to exhaust administrative remedies before resorting to the judicial remedies at common law." *First Pennsylvania Bank*, 731 F.2d at 1121. Deregulation essentially did away with the CAB's power to determine, in the first instance, whether a given tariff provision was reasonable. Thus, the validity of such a tariff became "a purely judicial question for determination by application of the federal common law." *Id.* at 1122. The Court then reasoned that the basis for the federal common law doctrine of "released value doctrine" was still valid and upheld the liability limitation. *Id.*

The case at bar is analogous. Here, the Plaintiff submits that (1) the airline deregulation, which eliminated the requirement of air carriers to file tariffs, as well as the federal mandate that air carriers not deviate from the filed tariff rates, leads him to the conclusion that the federal common doctrine which upholds limitations on liability when there is an absence of consideration, should now be discarded.

This Court recognizes that an air carrier is legally authorized to transport the entire flying public for free under the present status of airline deregulation. However, this does not undercut the longstanding holdings that exculpatory clauses on passes that are issued to employees are valid and

enforceable.[1] Similar to the rationale that was expressed in *Pennsylvania Bank*, this Court is not persuaded that airline deregulation and its modification of the CAB powers provides a proper basis for abandoning a longstanding and well-reasoned common law doctrine.[5]

## VI

As an additional point, the Plaintiff posits that, even if the federal common law is applied by the Court, an exception should be applied to this case.[6] In support of this proposition, the Plaintiff relies upon *Sassaman v. Pennsylvania Railroad Co.*, 144 F.2d 950, 956 (3d Cir.1944), which examined the enforceability of an exculpatory clause within a free pass that had been used by a railroad employee who commuted to and from work. The *Sassaman* Court concluded that the exculpatory clause was not enforceable because the employee, while commuting, was regarded as a passenger for hire, noting that the consideration for the pass was the service that would be provided by the employee when he arrived at work.

This analysis is contrary to Supreme Court and Sixth Circuit law. In *Thompson, supra*, the Court of Appeals for the Sixth Circuit considered the argument that a passenger's employment constituted sufficient consideration that, in turn, provided a justifiable legal basis upon which to conclude the exculpatory language on a "free" pass should be voided. The Court found that:

> The [employment as] consideration argument was presented to the Supreme Court in [*Charleston & Western Car-*

*olina R. Co. v. Thompson*, 234 U.S. 576, 34 S.Ct. 964, 58 L.Ed. 1476 (1914)] ... The Supreme Court ... rejected plaintiff's argument. After stating that the railroad was under no obligation to issue the free passes, the Court held that even if "the possibility of getting an occasional free pass entered into the motives of the employee in working ... the law did not contemplate his work as traditional inducement for the pass,, but, on the contrary, contemplated the pass as being what it called itself, free." Thus, if there is only the possibility of a free pass, Thompson, forecloses the issue: the pass is a gratuity and any conditions attached limiting liability ... will be enforced.

*Thompson*, 621 F.2d at 821–22.

Thus, it is clear to this Court that the theory, which holds an employee's services to constitute good and sufficient consideration for the pass, has been discarded. The pass in this case was a gratuity. Northwest was not obligated to provide the pass to any of its staff for commuting purposes or otherwise. *Declaration of Dinger*, at 5. Therefore, the exculpatory language is declared to be valid, and, as such, Morris' motion must be denied.

IT IS SO ORDERED.

---

**4.** Deregulation allows air carriers to fly the public at different rates or without charge.

**5.** The Plaintiff asserts that 14 C.F.R. 221.38(h) voids the exculpatory language in the Travel Pass. This statute reads, in pertinent part, as follows:

> No provision of the Board's regulations issued under this part or elsewhere shall be construed to require ... the filing of any tariff rules stating any limitation on, or condition relating to, the carrier's liability for personal injury or death....

The Court does not read this language as forbidding such limitation.

**6.** Plaintiff cites the common law exception which provides that if a pass is issued pursuant to a contract of employment, then there is consideration for the pass and the exculpatory provision is void. *See, Martin v. Greyhound Corp.*, 227 F.2d 501 (6th Cir.), *cert. denied*, 350 U.S. 1013, 76 S.Ct. 657, 100 L.Ed. 873 (1955). However, the pass in this case was not issued pursuant to an employment contract. *Dinger Declaration* at 5. Its issuance was entirely within the discretion of Northwest. Thus, this exception is not applicable to the present case.