## In re AIR CRASH AT DETROIT METROPOLITAN AIRPORT, DETROIT, MICHIGAN ON AUGUST 16, 1987.

### MDL No. 742.

United States District Court,
E.D. Michigan, S.D.

Feb. 4, 1991.

Carroll E. Dubuc, Washington, D.C., third party plaintiff, Northwest Airlines.

John J. Hennelly, Los Angeles, Cal., Donald E. Shely, Detroit, Mich., for defendant, McDonnell Douglas.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On November 21, 1990, the Defendant, McDonnell Douglas Corporation (MDC), filed a motion for reconsideration of Section III within the November 6, 1990 Order[1] that denied the motion of the Third-Party Plaintiff, Northwest Airlines, Inc. (Northwest), for a directed verdict. The reconsideration motion by MDC addresses only the level of conduct that will supervene the exculpatory provisions of Northwest's employee travel passes:[2] willful and wanton misconduct or gross negligence. For the following reasons, the Court will deny the motion.[3]

### I.

In its directed verdict motion, Northwest asserted that the legal standard that must be shown for it to be liable in the employee pass cases was "gross negligence." According to this argument, and under this legal standard, MDC must show that Northwest "(i) knew of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (ii) was able, by ordinary care and diligence in the use of the means at hand, to avoid the

---

1. For reasons unrelated to the instant motion, the November 6th Order was filed under seal.

2. Northwest contends that it has limited liability in certain cases that have been filed as a result of the Northwest Flight 255 air tragedy on August 16, 1987. One of the so-called special defenses is the exculpatory clause of the Employee Easy–Write Travel Pass:

 The holder agrees to assume all risk of accident and loss of every character, including personal injury, death and loss or damage to property and agrees that Northwest Airlines, Inc. shall not be liable for any such loss, damage, injury or death, whether caused by

negligence of Northwest Airlines, Inc. or its agents or otherwise.
*See Morris v. Northwest Airlines, Inc.,* 737 F.Supp. 422 (E.D.Mich.1989). For additional background of this multidistrict litigation, see *In re Air Crash Disaster at Detroit Metropolitan Airport on August 16, 1987,* 737 F.Supp. 391 (E.D.Mich.1989).

3. Under Local Rule 17(m)(2), responses to motions for reconsideration are not permitted unless authorized by the Court. There is no need for a response brief from Northwest on this issue inasmuch as the Court has reviewed Northwest's original submission on this point and is aware of the parties' respective positions.

resulting harm; and (iii) omitted to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another, so that there is an indifference to the harm equivalent to a willingness that it occur." Northwest's Brief in Support of Motion for Directed Verdict, at 13 (citing *Thayer v. Thayer*, 286 Mich. 273, 282 N.W. 145 (1938) and *Burnett v. City of Adrian*, 414 Mich. 448, 455–56, 326 N.W.2d 810 (1982)).

In its response to the directed verdict motion, MDC argued that the alleged exculpatory defense was governed by federal common law.[4] It noted that "[w]hile federal common law controls the validity of the travel passes, state law determines the standards of gross negligence and willful or wanton misconduct." MDC's Response Brief, at 14 (citing *Braughton v. United Air Lines, Inc.*, 189 F.Supp. 137 (W.D.Mo. 1960)). However, its definition of "gross negligence" differed from Northwest's version: "(1) a person knows of a situation that requires the exercise of ordinary care in order to avoid injury, (2) the person has the ability to avoid the injury by using ordinary care, (3) the person fails to use ordinary care to avoid the injury, and (4) it would have been apparent to a reasonable person that the result of a failure to use ordinary care would likely prove disastrous." *Id.* (citing *Magerowski v. Standard Oil Co.*, 274 F.Supp. 246 (W.D.Mich. 1967) and *Papajesk v. Chesapeake & Ohio R. Co.*, 14 Mich.App. 550, 166 N.W.2d 46 (1968) (leave to appeal denied)).

Referring to Northwest's admission that the Michigan definition of gross negligence applied, MDC argued that Northwest misinterpreted Michigan law to require MDC to show that "there is an indifference to the harm equivalent to a willingness that it occur." *Id.* at 15 (citing Northwest's Brief, at 13). This standard, in MDC's view, was not gross negligence but the common law definition of willful and wanton misconduct. Northwest, in turn, countered that it was MDC who misinterpreted Michigan

law, emphasizing that MDC must show evidence evincing an intention or willingness on the part of the Northwest Flight 255 crew to cause the resulting harm.

Although Northwest and MDC appeared to agree on the applicability of the gross negligence standard, they did not. Thus, the Court was required to resolve the dispute. In its November 6th Order, this Court determined that the Michigan standard of willful and wanton misconduct would apply to the contribution claims of MDC against Northwest:

> The final category of cases in which Northwest moves for a directed verdict is the so-called employee flight pass cases. In the four cases in which the deceased passenger was an off-duty Northwest employee, Northwest seeks an exemption from liability because of exculpatory language in its travel passes. This defense is governed by federal common law, Order, October 13, 1989, at 9–11, which provides that exculpatory clauses in travel passes do not protect interstate carriers from liability for gross negligence or willful or wanton misconduct. *See Braughton v. United Airlines*, 189 F.Supp. 137, 141, 143 (W.D. Mo.1960); *see also Sims v. Northwest Airlines*, 269 F.Supp. 272, 273 (S.D.Fla.1967). [footnote omitted]. The parties agree that Michigan law determines the standards for gross negligence or willful and wanton misconduct. *Braughton*, 189 F.Supp. 137 (federal law determines validity of travel passes; state law determines standard of conduct).

Primarily in response to the uncertain law in Michigan on the concepts of (1) gross negligence and (2) willful and wanton misconduct, the parties differ over what the relevant cases mean and what is the standard to which Northwest will be held in these cases.

This Court will apply the standard for willful and wanton misconduct, not for gross negligence. In *Malcolm v. City of East Detroit*, 180 Mich.App. 633 [447

4. In *Morris*, 737 F.Supp. 422, this Court held that (1) the validity of travel passes that have been issued by interstate carriers is governed by federal law, and (2) the exculpatory language within the Northwest travel pass is valid as a matter of federal common law.

N.W.2d 860] (1989) [, *app. granted*, 435 Mich. 861 (1990)], the Michigan Court of Appeals addressed the disagreements upon which the parties have expounded in their respective briefs:

> The test for wil[l]ful and wanton misconduct, set forth in *Gibbard v. Cursan*, 225 Mich. 311, 322, 196 N.W. 398 (1923), requires:
>
> > (1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

Although this test was criticized as "poorly phrased" by the Supreme Court in *Burnett v. City of Adrian*, 414 Mich. 448, 455–56; 326 N.W.2d 810 (1982), the Court declined to reformulate it, and the *Gibbard* test continues to be applied by this Court. See *Wright v. Dudley*, 158 Mich.App. 154, 158; 404 N.W.2d 217 (1986), vacated on other grounds 429 Mich. 887 [416 N.W.2d 314] (1987); *Williams v. City of Cadillac*, 148 Mich.App. 786, 793; 384 N.W.2d 792 (1985). However, the *Burnett* Court did note that

> willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does. Willful and wanton misconduct is not, as the *Gibbard* Court observed, a high degree of carelessness....

....

... Though plaintiffs argue that the concept of gross negligence can also be defined as an extreme departure from ordinary care, or a severe degree of negligence, ... we note that this theory was considered and rejected by Justice Moody in his concurring opinion in *Burnett, supra* at 476, n. 23 [326 N.W.2d 810], joined by Justices Williams and Levin, as essentially unworkable, confusing, and in conflict with proper negligence analysis. The *Burnett* majority simply stated that it was "bound" by the *Gibbard* definition of gross negligence, which requires the existence of precedent negligence on the part of the plaintiff....

*Id.* [180 Mich.App.] at 640–41, 643 [447 N.W.2d 860]. [footnote: There is no claim of "precedent negligence" such that the concept of gross negligence under Michigan law should apply.].[5]

In its reconsideration motion, MDC contends that the holding of this Court which determined that the willful and wanton misconduct standard will apply is erroneous[6] because (1) Michigan does have a workable definition of gross negligence or (2) the federal common law equivalent of gross negligence should apply.

## II.

Courts have long recognized that public policy prohibits a carrier from releasing itself from liability for conduct more egregious than ordinary negligence. For example, in *Northern Pacific Railway Co. v. Adams*, 192 U.S. 440, 24 S.Ct. 408, 48 L.Ed. 513 (1904), the United States Supreme Court noted:

> The question is distinctly presented whether a railroad company is liable in

---

**5.** *See also James v. Leco Corp.*, 170 Mich.App. 184, 427 N.W.2d 920 (1988) (recreational use statute, *Mich.Comp.Laws Ann.* § 300.201, precludes cause of action to those persons who are injured on another person's land for recreational purposes but without paying any consideration unless the injuries were caused by "gross negligence or willful and wanton misconduct"; court equated gross negligence with last clear chance doctrine and applied *Gibbard/Burnett* test for willful and wanton misconduct); *Thomason v. Olive Branch Masonic Temple*, 156 Mich.App. 736, 401 N.W.2d 911 (1986) (same).

**6.** Local Rule 17(m)(3) governs reconsideration requests:

> Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

damages to a person injured, through the negligence of its employes, who at the time is riding on a pass given as a gratuity, and upon the condition known to and accepted by him that it should not be responsible for such injuries. *It will be perceived that the question excludes injuries resulting from wilful or wanton acts, but applies only to cases of ordinary negligence.*

*Id.* at 451, 24 S.Ct. at 410 (emphasis added). Sixteen years later, the Supreme Court reiterated that a "carrier by rail is liable to a trespasser or to a mere licensee *wilfully or wantonly injured* by its servants in charge of its trains ... and a sound public policy forbids that a less onerous rule should be applied to a passenger injured by like negligence when lawfully upon one of its trains." *New York Central Railroad Co. v. Mohney,* 252 U.S. 152, 157–58, 40 S.Ct. 287, 289, 64 L.Ed. 502 (1920) (emphasis added); *id.* at 158, 40 S.Ct. at 289 (Day and Van Devanter, JJ., concurring) (releasing clause on pass did not cover his injury because it resulted from willful or wanton negligence, as to which such a clause is of no force or effect);[7] *accord Sabol v. Chicago & N.W. Ry. Co.,* 255 Mich. 548, 238 N.W. 281 (1931), *cert. denied,* 284 U.S. 688, 52 S.Ct. 265, 76 L.Ed. 581 (1932); *Shelby Mutual Insurance Co. v. Grand Rapids,* 6 Mich.App. 95, 98, 148 N.W.2d 260 (1967).

■ After studying a host of cases in which similar issues have arisen, this Court believes that this nettlesome dispute has resulted more from semantics or careless usage of language than anything else. This much is clear and undisputed by the parties: an interstate carrier can relieve itself from liability on its travel passes for ordinary negligence. However, any conduct, whether by intentional act or omission to act, which is beyond ordinary negligence, cannot be contractually released from liability regardless of its characterization. The difficult question becomes how best to characterize this amorphous category of conduct beyond ordinary negligence.

Although there are cases in which terms such as "gross negligence," "willful misconduct," and "willful and wanton misconduct" are tossed around, this Court does not believe that the intent of the reported cases was to create tiers of conduct: (1) reasonable care, (2) ordinary negligence, (3) gross negligence, (3) wanton misconduct, and (4) willful misconduct.[8] Rather, these

---

**7.** The early decisions do not indicate whether the definitional source for "willful and wanton misconduct" is federal or state law. Inasmuch as federal law controls (and has upheld) the validity of travel passes in which there is a release of liability for ordinary negligence, a strong argument can be made that federal law should define what level of conduct cannot be released from liability by an interstate carrier. However, whether using state or federal law, the results are not likely to be different inasmuch as all the courts are working from the same cloth of public policy and the federal court is likely to look to state law for guidance on how to characterize that level of conduct beyond ordinary negligence. *Cf. United States v. Republic Insurance Co.,* 775 F.2d 156 (6th Cir.1985); *United States v. California,* 655 F.2d 914 (9th Cir.1980) (borrowing state law to fashion federal rule of decision permissible under 28 U.S.C. § 1345 (United States as plaintiff)); *United States v. Belanger,* 598 F.Supp. 598 (D.Me.1984).

**8.** Wanton misconduct is different from willful misconduct. Black's Law Dictionary 1185–86, 1753 (4th ed. 1951). Nevertheless, the reported cases discuss willful and wanton misconduct as if it was one level of conduct. In addition, many of the cases hold that public policy prohibits a release from liability for willful and wanton misconduct, presumably allowing under this tiered analysis a release for conduct that amounts to gross negligence, whatever that may be.

The parties' exhortations on this relatively minor issue illustrate the inexactitudes and shortcomings of the language of the law. The instant situation is not unlike that of Justice Stewart in attempting to define obscenity:

In saying this, I imply no criticism of the Court, which in those cases was faced with the task of trying to define what may be indefinable.... I shall not today attempt further to define the kinds of material that I understand to be embraced within [hard-core pornography]; and perhaps I could never succeed in intelligibly doing so. *But I know it when I see it,* and the motion picture involved in this case is not that.

*Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1682, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring). For similar reasons, courts have eschewed continued reference to the concept of gross negligence beyond that of the last clear chance doctrine. *See Malcolm,* 180 Mich.App. at 643, 447 N.W.2d 860; *Valasquez v. Northwest*

cases simply intended to hold that a carrier could not release itself from liability for conduct beyond ordinary negligence that could be called gross negligence, wanton or willful misconduct, or willful and wanton negligence, all of which are in substance the equivalent to the admittedly nebulous category of conduct more egregious than ordinary negligence. Of course, this category of more egregious conduct could encompass acts that fall on various points of this continuum. The difficulty is identifying the dividing line between ordinary negligence and everything else in a vacuum. Northwest wants this Court to focus upon the extreme side of the continuum where the emphasis is upon willfulness and an intention to cause the harm. On the other side of the continuum, MDC wants this Court to focus upon conduct which barely crosses the line from ordinary negligence into the precipice of what it calls gross negligence.

 This semantic mountain is unnecessary and one which a jury should not have to climb. The intent of this Court is to encompass the entire continuum of conduct beyond ordinary negligence so that the jurors, should the matter be submitted to them for their consideration, will be aware of it and able to categorize Northwest's conduct as (1) not negligent, (2) negligent, or (3) what this Court calls the entire continuum of willful and wanton misconduct.[9] The touchstone is that there is one category of conduct beyond ordinary negligence but within which there can be conduct which is more blameworthy.

The point may best be illustrated by the Michigan Supreme Court's description of the qualitative difference between willful and wanton misconduct and ordinary negligence:

One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence. His conduct must be such as to put him *in the class* with the wil[l]ful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not.

*Gibbard*, 225 Mich. at 320–21, 196 N.W. 398 (emphasis added). Thus, conduct that falls on the continuum closest to, but beyond, ordinary negligence is no different, in the eyes of the law, from conduct at the other end of the continuum closest to intentional harm. The conduct is all in one "class." Thus, no matter where Northwest's conduct falls on the continium beyond ordinary negligence, if it does, the legal effect is the same.

In *Braughton*, the court was confronted with a problem similar to that confronted by this Court. Arizona law had cases in which there were different tests for gross negligence and wanton and willful misconduct. In the end, the court held that "[g]ross and wanton negligence can only be established where it is shown that one intentionally did an act or failed to act under circumstances which invoked '*a high degree of probability that substantial harm will result*' to another." 189 F.Supp. at 145 (citation omitted) (emphasis added). This standard is not different in substance from the *Gibbard/Burnett* test that this Court indicated it would apply, the third

*Airlines, Inc.*, No. 87–3263, slip op. at 13 (E.D. Mich. Oct. 11, 1989) ("In *Continental Insurance Co. v. American Protection Industries*, 197 Cal. Ct.App.1987) [197 Cal.App.3d 322, 242 Cal.Rptr. 784 sic], the Court abolished the distinction between gross negligence and ordinary negligence. Due to the advent of the comparative negligence doctrine, the *Continental* Court concluded that the purpose of categorizing negligence into relative degrees of misconduct 'has been radically diminished.' ").

**9.** The *Gibbard/Burnett* willful and wanton misconduct standard will adequately "bring about a greater understanding of the issues and the role of the jury, [k]eep[ing] in mind that simplicity and brevity should serve as the standard." Letter from Hon. Julian Abele Cook, Jr. to Michael Selter, Esq. and Douglas Winter, Esq. (Dec. 3, 1990) (addressing jury instructions).

**326**

element of which is the omission to use such care and diligence to avert the threatened danger, *when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.*

The formulation in *Gibbard/Burnett* is not substantially different from the standard that MDC requests. The only difference, if any, between the standard that this Court said it would follow and the one that MDC requests is the so-called clarification in *Burnett* to the effect that "willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, *such indifference* to whether harm will result as to be the equivalent of a willingness that it does." (emphasis added). This latter phraseology is nothing more than a rephrasing of the ratio decidendi of the third element of the *Gibbard* test. If a person knows that harm is likely to occur as a result of his actions, and yet is indifferent to it, his conduct is, in effect, no different than if he intended the harm to occur. Thus, a person who (1) fails to use care to avert danger when he knows that the result of such conduct is likely to prove disastrous to another (*Gibbard/Burnett*), (2) acts under circumstances which involved a high degree of probability that substantial harm will result to another (*Braughton*), or (3) knows harm is likely to occur to others and yet is indifferent to it (*Burnett*), is equivalent to, or in the same class as, a person who intends that harm to occur as a result of his actions.

MDC has not satisfied the minimum requirements of Local Rule 17(m), with regard to the November 6th Order, and, hence, its motion for reconsideration must be denied.

IT IS SO ORDERED.