*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ALPHA OUMAR DIALLO,

       Defendant-Appellant.

UNPUBLISHED
July 23, 2019

No. 342800
Washtenaw Circuit Court
LC No. 16-000529-FH

Before: O'BRIEN, P.J., and FORT HOOD and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions for reckless driving causing death, MCL 257.626(4); two counts of reckless driving causing impairment of body function, MCL 257.626(3); moving violation causing death, MCL 257.601d(1)[1]; and two counts of moving violation causing impairment of body function, MCL 257.601d(2).[2] We conclude that none of defendant's arguments on appeal warrant relief. But because it was improper for the trial court to instruct the jury on both moving violation causing death and reckless driving causing death, we vacate defendant's conviction for moving violation causing death.

## I. BACKGROUND

---

[1] While not raised by the parties, we note that it was error for the trial court to instruct the jury on moving violation causing death. MCL 257.626(5) provides that in a prosecution for reckless driving causing death, "the jury shall not be instructed regarding the crime of moving violation causing death." See *People v Jones*, 497 Mich 155, 168; 860 NW2d 112 (2014) (upholding MCL 257.626(5)). We therefore vacate defendant's conviction for moving violation causing death.

[2] The jury acquitted defendant of operation of a motor vehicle while under the influence causing death, MCL 257.625(4); and two counts of operation of a motor vehicle while under the influence causing serious injury, MCL 257.625(5).

-1-

This case arises out of a serious traffic accident on southbound US 23 near Willis Road on July 8, 2015, at approximately 12:20 p.m. Defendant was driving a semitruck pulling a trailer on southbound US 23 going approximately 65 miles per hour. Defendant was traveling in the right lane, and pulled into the left lane to pass another commercial truck. After passing, defendant moved back into the right lane. Traffic ahead of defendant was stopped or slowing down because of an upcoming construction zone, but defendant failed to apply his brakes. Defendant rear-ended a white Toyota Corolla, pushing it into a black Chevrolet Impala. The Impala, rotating clockwise, made impact with a flatbed truck hauling a large piece of equipment and came to rest on the right shoulder of the road facing north. The Corolla also made impact with the flatbed truck, becoming sandwiched between defendant's truck and the flatbed. Defendant's truck had to be pulled apart from the Corolla. As a result of the accident, the driver of the Corolla suffered serious injuries, and the Corolla's passenger died at the scene. The passenger in the Impala also suffered serious injuries.

## II. CHALLENGE TO THE SEARCH WARRANT

While investigating the accident, officers at the scene seized defendant's phone, and eventually obtained a warrant to search the phone. On appeal, defendant argues that the warrant obtained by law enforcement to search the contents of his phone was invalid because (1) it failed to establish that it was reasonable to believe that there would be evidence relating to the accident on the phone and (2) it was overly broad in regard to the documents or items to be seized. We disagree.[3]

---

[3] The focus of defendant's argument on appeal is the validity of the warrant, but at one point he states that "the seizure of [his] phone was improper, as there was not probable cause to believe that the phone was an instrumentality of the crime[.]" Defendant abandoned this argument by not developing it beyond this statement. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).

Even addressing the issue, it is without merit. It is undisputed that defendant's cell phone was seized without a warrant immediately following the accident. "As a general rule, searches conducted without a warrant are per se unreasonable under the Fourth Amendment unless the police conduct falls under one of the established exceptions to the warrant requirement." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). Under the exigent circumstances exception, there must be "an emergency leaving no time for a warrant," and officers "must also possess probable cause that the premises to be searched contains" evidence of a crime. *People v Davis*, 442 Mich 1, 24; 497 NW2d 910 (1993). Probable cause exists when the facts and circumstances known to the officers at the time of the search would lead a reasonably prudent person to believe that a crime has been or is being committed and that evidence will be found in a particular place. *Beuschlein*, 245 Mich App at 750. The existence of an actual emergency is established if "immediate action is necessary to . . . prevent the imminent destruction of evidence[.]" *People v Snider*, 239 Mich App 393, 408; 608 NW2d 502 (2000).

The exigent circumstances exception applied here. Trooper Nathan Dillon, the officer in charge at the scene, found defendant at fault for the accident. Trooper Dillon testified that he

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures, and provides that no warrants shall issue without probable cause. US Const, Am IV. Michigan's Constitution contains substantially the same provision, see Const 1963, art 1, § 11, which has been construed as coextensive with its federal counterpart, *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011). The exclusionary rule, with several exceptions, bars evidence obtained during an unconstitutional search. *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003).

"A search warrant may not be issued unless probable cause exists to justify the search." *People v Waclawski*, 286 Mich App 634, 697; 780 NW2d 321 (2009). "Probable cause exists when the facts and circumstances would allow a reasonable person to believe that the evidence of a crime or contraband sought is in the stated place." *Id*. at 698. "Probable cause must be based on facts presented to the issuing magistrate by oath or affirmation." *Id*. The affidavit supporting a request for a warrant "must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs." *Id*. "The affiant may not draw his or her own inferences, but must state the matters that justify the drawing of inferences." *Id*. Still, "the affiant's experience is relevant to the establishment of probable cause." *Id*. Lastly, the affidavit must establish a nexus between the place or item to be searched and the evidence sought. See *People v Hellstrom*, 264 Mich App 187, 191; 690 NW2d 293 (2004).

The affidavit here stated that the property to be searched was a black, T-Mobile Galaxy S4 cell phone belonging to defendant. In the section reserved for facts establishing probable cause for the search, Trooper Nathan Dillon stated that a semitruck driven by defendant rear-ended a car, causing that car to hit another car, and pushing the car into a flatbed truck. Trooper Dillon further provided that a witness said that defendant hit the first car before applying his brakes. Trooper Dillon also explained that he spoke with defendant, who told the trooper that he was listening to music on his phone through his truck's speakers. The affidavit concluded that cell phone files and hardware could be important to a criminal investigation because (1) the cell phone may be contraband, evidence, instrumentalities, or fruits of crime; and/or (2) the cell phone may be used as a storage device that contains contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data. Based on this affidavit, the magistrate issued a

---

seized defendant's phone at the scene because he believed that there might be evidence on it related to the crash and he wanted to preserve that potential evidence for the investigation. Trooper Dillon explained that defendant told the trooper at the scene that traffic stopped in front of him and he was unable to stop before impact, that he did not take any prescription medications, and that he only used his phone to listen to music via his truck's speakers. Witnesses told Trooper Dillon that they did not see defendant apply his brakes before the crash. Trooper Dillon did not see any signs that defendant was intoxicated or impaired, but did see defendant using his cell phone at the scene. Considering the circumstances of this case, it was reasonable for Trooper Dillon to believe that there may be evidence relating to the accident on defendant's cell phone and that the pertinent evidence might be destroyed if the phone was not secured, leaving no time for a warrant. See *Davis*, 442 Mich at 24; *Snider*, 239 Mich App at 408. Therefore, seizure of defendant's cell phone at the scene was not improper.

warrant to search defendant's phone for "[a]ny and all records or documents[4] pertaining to a fatal crash on S/B US-23 near Willis Rd."

As explained by this Court in *People v Echavarria*, 233 Mich App 356, 366-367; 592 NW2d 737 (1999):

> When reviewing a magistrate's decision to issue a search warrant, this Court must evaluate the search warrant and underlying affidavit in a commonsense and realistic manner. This Court must then determine whether a reasonably cautious person could have concluded, under the totality of the circumstances, that there was a substantial basis for the magistrate's finding of probable cause.

A magistrate's probable-cause determination "is entitled to great deference by reviewing courts." *People v Keller*, 479 Mich 467, 477; 739 NW2d 505 (2007) (quotation marks and citation omitted).

Defendant is correct that Trooper Dillon did not state a specific connection between defendant's cell phone and the accident (the crime). But this appears to ignore that Trooper Dillon could "not draw his . . . own inferences, but" had to "state the matters that justif[ied] the drawing of inferences." *Waclawski*, 286 Mich App at 698. This is what Trooper Dillon did. The magistrate was then permitted to draw inferences from the facts stated in the affidavit. Considering the circumstances outlined in the affidavit, it was reasonable for the magistrate to infer that defendant may have been using his phone at the time of the accident because witnesses suggested that he did not brake until he hit the first car and defendant admitted that he was listening to music on his phone. Thus, "a reasonably cautious person could have concluded, under the totality of the circumstances, that there was a substantial basis" for a finding of probable cause that defendant was using his phone at the time of the accident and, therefore, had been driving recklessly and committed a moving traffic violation. See *Echavarria*, 233 Mich App at 366-367. See also *People v Mullen*, 282 Mich App 14, 27; 762 NW2d 170 (2008) (stating that probable cause only requires "a probability or substantial chance of criminal activity," not certainty) (quotation marks and citations omitted).

We further conclude that the scope of the warrant—"[a]ny and all records or documents pertaining to a fatal crash on S/B US-23 near Willis Rd"—was not overly broad. "A search warrant must particularly describe the place to be searched and the persons or things to be seized." *People v Unger (On Remand)*, 278 Mich App 210, 245; 749 NW2d 272 (2008). "The amount of specificity required will vary with the circumstances and the types of items involved." *Id*. "The purpose of the particularity requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *Id*. (quotation marks and citations omitted).

---

[4] The affidavit provided definitions for "records" and "documents" relevant to a search of an electronic device.

The property to be searched—"[a]ny and all records or documents pertaining to a fatal crash on S/B US-23 near Willis Rd"—directed the police to only search for evidence of a possible crime. In *United States v Castro*, 881 F3d 961, 965 (CA 6, 2018), the Sixth Circuit concluded that "[a] warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime."[5] Similarly, in *Unger (On Remand)*, 278 Mich App at 245, this Court held that a warrant authorizing the seizure of "[a]ny evidence of homicide" was not overly broad because it "did not authorize the seizure of *all* items, but, rather, only permitted the seizure of items that might reasonably be considered 'evidence of homicide.' " Like the courts in *Unger* and *Castro*, we conclude that the warrant here authorizing the seizure of "[a]ny and all records or documents pertaining to a fatal crash on S/B US-23 near Willis Rd" was not overly broad. It was reasonable for the police to search through defendant's cell phone data and applications to determine whether it contained evidence "pertaining to [the] fatal crash" on southbound US 23, and the warrant appropriately limited the search to only that evidence. Accordingly, the warrant did not violate the particularity requirement.

## III. PROSECUTORIAL MISCONDUCT

Next, defendant contends that the prosecutor committed misconduct by improperly bolstering the testimony of prosecution witnesses while denigrating the defense's expert witness. We disagree.

Because defendant did not object to the prosecution's alleged improper statements at trial, this issue is unpreserved, and our review is for plain error affecting substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). To warrant relief under this standard, defendant must show that (1) an error occurred; (2) the error was plain, i.e., clear and obvious; and (3) the plain error affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Claims "of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64.

Defendant first argues that the prosecution improperly bolstered the credibility of its witnesses, including Trooper Dillon. Generally, a prosecutor cannot vouch for the credibility of his or her witnesses. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). The following are the prosecutor's contested statements from her opening:

---

[5] Though cases from other jurisdictions are not binding precedent, this Court may find them persuasive. *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).

You will hear testimony from Trooper Pasternak, Trooper Matthew, Trooper Dillon[,] and Trooper Dillon will be perfectly honest, ladies and gentlemen, as will Trooper Pasternak and Trooper Matthews.

Trooper Dillon did not notice signs of alcohol intoxication in the defendant. And you will hear testimony from [the forensic scientist] that she tested the defendant's blood for alcohol and he had no alcohol.

Reading the prosecutor's remarks in context, see *Dobek*, 274 Mich App at 64, it is clear that defendant mischaracterizes her statements. These statements were not bolstering the prosecution's witnesses; they were an acknowledgment that Trooper Dillon would testify that he did not observe any signs that defendant was intoxicated at the scene and that no alcohol was found in defendant's blood. Defendant was charged with one count of operating a motor vehicle while under the influence causing death and two counts of operation of a motor vehicle while under the influence causing serious body injury. Because alcohol is commonly associated with operation of a motor vehicle while under the influence, the prosecutor was preemptively acknowledging that it was not alleging that defendant was under the influence of alcohol. To do this, the prosecution stated that the evidence would show that Trooper Dillon did not observe any signs of alcohol intoxication and that there was, in fact, no alcohol in defendant's blood. Accordingly, defendant has not shown that these statements improperly bolstered witness testimony and denied him of a fair trial. See *id*.

Defendant also argues that the prosecution's comments regarding the fee that his defense expert received for his testimony were improper. However, these comments were not improper; they were a permissible attack on the credibility of the defense expert. See *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002) ("Any party may attack the credibility of a witness."). At trial, the defense's expert in toxicology testified that he was paid $250 per hour for his research and preparation time for the case, and that he would receive $450 per hour for testifying in court. Considering that the testimony at trial established that the witness was compensated for his testimony, it was not improper for the prosecution to argue he had a financial motive to testify. See *Unger (On Remand)*, 278 Mich App at 237 ("[C]ounsel is always free to argue from the evidence presented at trial that an expert witness had a financial motive to testify.").[6]

IV. JURY INSTRUCTIONS

Defendant asserts that the trial court erred in not providing his requested instructions to the jury concerning the reckless driving charges because the model jury instructions misstate the law. We conclude that defendant's argument does not entitle him to relief.

---

[6] In the alternative, defendant asserts that defense counsel was ineffective for failing to object to the prosecutor's allegedly improper comments. Because there was no prosecutorial misconduct, defense counsel was not ineffective for not objecting. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) ("Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion.").

Challenges to jury instructions that involve questions of law are reviewed de novo. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). In reviewing instructional error claims, "this Court examines the instructions as a whole, and even if there are some imperfections, there is no basis for reversal if the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried." *People v Martin*, 271 Mich App 280, 337-338; 721 NW2d 815 (2006) (quotation marks and citation omitted). "This Court also reviews de novo the proper interpretation of a statute." *Id*. at 338.

At issue here is the instruction related to MCL 257.626(2).[7] That statute provides that "a person who operates a vehicle upon a highway . . . in willful or wanton disregard for the safety of persons or property is guilty" of reckless driving. MCL 257.626(2).

The trial court instructed the jury on MCL 257.626(2) using the model jury instructions. According to defendant, the model jury instructions incorrectly define "willful or wanton disregard." In relevant part, the model jury instructions provide that the prosecutor is required to prove

> that the defendant drove the motor vehicle in willful or wanton disregard for the safety of persons or property. "Willful or wanton disregard" means more than simple carelessness but does not require proof of an intent to cause harm. It means knowingly disregarding the possible risks to the safety of people or property. [M Crim JI 15.16; M Crim JI 15.17.[8]]

"Willful or wanton" is not defined in the statute, and it is unclear where the model jury instructions drew its definition from. Defendant argues—as he did in the lower court—that the trial court should have defined "willful or wanton disregard" to mean the same as "willful and wanton misconduct" as used in *Jennings v Southwood*, 446 Mich 125; 521 NW2d 230 (1994). Although that civil case dealt with "willful *and* wanton" misconduct, whereas the statute here uses the phrase "willful *or* wanton" disregard, the *Jennings* Court explained that the "willful *and* wanton" is the functional equivalent of "willful *or* wanton" because "[t]o require a showing of both states of mind defies logic and is internally inconsistent." *Id*. at 141. Thus, relevant to defendant's appeal, the *Jennings* Court provided as follows:

> Wilful and wanton misconduct . . . describes conduct that is either wilful—i.e., intentional, or its effective equivalent. "[W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such

---

[7] In a recent published decision, this Court recited the jury instructions for MCL 267.626(2), but expressly acknowledged that the instructions were not challenged on appeal. See *People v Carll*, 322 Mich App 690, 695, 695 n 2; 915 NW2d 387 (2018). *Carll* did not otherwise interpret MCL 257.626(2), and is therefore not dispositive to the issue before us.

[8] The trial court gave these two instructions for defendant's separate charges of reckless driving causing death, and reckless driving causing impairment of body function. See MCL 257.626(3) and (4).

indifference to whether harm will result as to be the equivalent of a willingness that it does." [*Id*. at 140, quoting *Burnett v City of Adrian*, 414 Mich 448, 455; 326 NW2d 810 (1982) (second alteration in *Jennings*; emphasis omitted).]

Accepting without deciding that "willful" should be defined as intentional and "wanton" should be defined as such indifference that it amounts to willfulness, defendant is not entitled to relief. If we accept those definitions, "willful or wanton disregard for the safety of" others as used in MCL 257.626 would mean an intentional disregard for others' safety, or such indifference to others' safety so as to amount to an intentional disregard for their safety.[9]

The question is then whether the model jury instructions properly reflect this meaning. The first portion of the instruction—" '[w]illful or wanton disregard' means more than simple carelessness"—is appropriate. As explained by this Court, "[t]o show that a defendant acted in wilful and wanton disregard of safety, something more than ordinary negligence must be proved." *People v Crawford*, 187 Mich App 344, 350; 467 NW2d 818 (1991), citing *People v Chatterton*, 102 Mich App 248, 249-250; 301 NW2d 490 (1980), aff'd 411 Mich 867 (1981). Likewise, the instruction that "willful and wanton disregard . . . does not require proof of an intent to cause harm" fairly presented the jury with the issues to be tried. See *Martin*, 271 Mich App at 337-338. Wanton conduct, by any definition, does not require proof of intent. And even a willful disregard of others' safety does not require proof of "intent to cause harm"—only intent to disregard the safety of others.

Thus, accepting defendant's definitions of "willful" and "wanton," the only potential issue with the instruction—and the portion that defendant seems to contest—is the intent element: where the instruction defines "willful or wanton disregard" to mean "knowingly

---

[9] Defendant argues that the jury instructions should adopt wholesale the portion of *Jennings* that " '[W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does.' " *Jennings*, 446 Mich at 140, quoting *Burnett*, 414 Mich at 455 (alteration in *Jennings*; emphasis omitted). Yet *Jennings* concerned "willful and wanton *misconduct*," whereas the instructions for MCL 257.626 must explain the meaning of "willful or wanton *disregard for the safety of persons or property*." This latter phrase concerns the disregard of possible harm, regardless of whether such harm was intended. So while *Jennings* may provide insight into the definitions of "willful" and "wanton," it is not binding for defining, as a whole, "willful or wanton disregard for the safety of persons or property."

Moreover, "willful and wanton misconduct" is itself a legal term of art. See *Sabol v Chicago & NW R Co*, 255 Mich 548, 552; 238 NW 281 (1931) (noting that "courts and text-writers have given it [referring to the term 'willful and wanton misconduct'] a definite meaning in the law of negligence and it is generally understood"). Attempting to use the definition for this legal term of art to define a different term seems somewhat out-of-step with the Legislature's instruction that "technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a.

disregarding the possible risks to the safety of people or property." "Knowingly" is used as an adverb in MCL 257.626(2), and the dictionary lists "knowingly" as the adverb form of the adjective, "knowing." See *Webster's Collegiate Dictionary* (11th ed); *Random House Webster's Collegiate Dictionary* (1997). *Webster's Collegiate Dictionary* (11th ed) defines "knowing," in relevant part, as "DELIBERATE." Likewise, *Random House Webster's Collegiate Dictionary* (1997) defines "knowing" as "conscious; intentional; deliberate." This Court has previously defined "knowingly" as "intentionally" in the criminal context. See *People v Gould*, 225 Mich App 79, 84; 570 NW2d 140, 144 (1997) (defining "knowingly" as "intentionally" for purposes of first-degree child abuse).

It is therefore evident that the model jury instructions instruct jurors that "willful or wanton disregard for the safety of" others means the *intentional* or *deliberate* disregard for others' safety. While this portion of the instruction is imperfect under defendant's argued-for definitions (because it does not define "wanton disregard" for others' safety as "such indifference to others' safety so as to amount to an intentional disregard for their safety"), the resulting unfairness, if any, is wrought on the prosecution, not defendant. Thus, accepting defendant's definitions for "willful" and "wanton" without deciding whether those definitions should apply, reversal is not required. The model jury instructions "adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried." *Martin*, 271 Mich App at 338. And to any extent that the model jury instructions were incorrect, the error was harmless because it did not result in a miscarriage of justice.[10] See MCL 769.26 ("No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.").[11]

## V. *BATSON* CHALLENGE

Finally, defendant contends that the trial court erred in ruling that the prosecution's removal of two prospective black jurors did not violate *Batson v Kentucky*, 476 US 79; 1065 S Ct 1712; 90 L Ed 2d 69 (1986). We disagree.

"Under the Equal Protection Clause of the Fourteenth Amendment, a party may not exercise a peremptory challenge to remove a prospective juror solely on the basis of the person's race." *People v Knight*, 473 Mich 324, 335; 701 NW2d 715 (2005). The constitutionality of a

---

[10] Harmless error review applies because this is a preserved, nonconstitutional error. See *People v Schaefer*, 473 Mich 418, 442-443; 703 NW2d 774, 788 (2005) ("[I]nstructional error based on the misapplication of a statute is generally considered nonconstitutional error.").

[11] Defendant also argues that he was deprived of his right to present a defense because the trial court's instructions "state a standard lesser than what is contained in the statute itself." As explained, if we accept defendant's argued-for definitions, the instructions do not state a standard lesser than what is in the statute, so defendant's argument is based on a mistaken premise and does not warrant relief.

peremptory challenge requires a three-step analysis: (1) "the opponent of the peremptory challenge must make a prima facie showing of discrimination;" (2) "if the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike;" and (3) "if the proponent provides a race-neutral explanation as a matter of law, the trial court must then determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has provided purposeful discrimination." *Id*. at 336-338.

Here, the prosecution exercised preemptory challenges to remove two black jurors: BJ and KS. Defense counsel asked to approach for a bench conference, and a recorded bench conference ensued. Defense counsel stated that the prosecution used two peremptory challenges on two black jurors when there were only a total of five in the venire, and because defendant was also black, the prosecution's removals constituted a *Batson* issue. In response, the prosecution stated that there was no *Batson* issue because there were race-neutral reasons to dismiss both jurors on the basis of their answers to questions. The prosecution explained that KS was a social worker, and she had worked for the public defender's office, which supported her dismissal. As for BJ, the prosecution stated that he had an uncle who was killed in a traffic crash, he suggested that he may be unable to be fair and impartial, and he reported routine problems with drugs and alcohol in his family. After hearing the prosecution's arguments, the trial court concluded that she provided race-neutral reasons for the dismissals, and the bench conference concluded.

Defendant contends that the trial court erred because "the defense made a sufficient prima facie showing of racial discrimination to require the trial judge to move on to the two further *Batson* inquiries." Defendant's argument is moot. As explained by the United States Supreme Court, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v New York*, 500 US 352, 359; 111 S Ct 1859; 114 L Ed 2d 395 (1991).

Defendant also appears to contend that the prosecution's explanations were pretextual and did not justify her peremptory challenge. We disagree. If the third *Batson* step is at issue—whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination—this Court reviews the trial court's ruling for clear error. *Knight*, 473 Mich at 345. A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake was made. *People v Craft*, 325 Mich App 598; 927 NW2d 708 (2018).

The prosecutor explained that she dismissed BJ for a number of reasons, including because he was unsure whether he could be impartial because his uncle was killed in a drunk-driving accident.[12] Likewise, the prosecutor explained that she dismissed KS because she previously worked for the public defender's office. Both of these explanations are race-neutral,

---

[12] The prosecution dismissed another prospective juror—whose race is unknown—for a similar reason: he reported that he knew individuals who had been victims of alcohol-related car accidents.

and we are not definitely and firmly convinced that the trial court erred by concluding that they were not pretextual. Thus, defendant has not shown that the preemptory challenges to jurors BJ and KS were the result of racial discrimination.

## VI. CONCLUSION

For the reasons explained in this opinion, we conclude that none of defendant's arguments on appeal warrant relief. But because it was improper for the trial court to instruct the jury on both moving violation causing death and reckless driving causing death, see MCL 257.626(5), we vacate defendant's conviction for moving violation causing death.

Defendant's conviction for moving violation causing death is vacated. But otherwise, we affirm.

/s/ Colleen A. O'Brien
/s/ Karen M. Fort Hood
/s/ Thomas C. Cameron